BRUSCUP, Adm'r, *vs.* JAMES TAYLOR and MARGARET, his Wife.

SUPERSEDEAS FROM COURT OF APPEALS TO STAY FURTHER PROCEEDINGS BY ORPHANS' COURT UNDER AN ORDER APPEALED FROM, PENDING THE APPEAL.—Where an order of the Orphans' Court requiring parties before them to bring money into Court, has been appealed from, and the Orphans' Court notwithstanding proceeds to enforce its first order by attachment for contempt, and an order for the imprisonment of the parties attached, the Appellate Court will, by way of *supersedeas*, order the suspension of all further proceedings by the Orphans' Court until the order appealed from be heard and determined.

PETITION for a *supersedeas* in the Court of Appeals, on an appeal from an order of the Orphans' Court of Baltimore city.

Joseph Henry, in his lifetime, made in the Eutaw Savings Bank a deposit of about $1,800, which was entered in these words : "Joseph Henry and Margaret Taylor, and the survivor of them, subject to the order of either," and a few months after died. After his death Margaret Taylor, one of the petitioners, drew out the money.

Bruscup, styling himself acting administrator, filed his petition against Taylor and wife claiming this money.

James Taylor and Margaret, his wife, appeared and set up the fact that the money was deposited as above stated ; that it was the property of the said Margaret, and not of the estate ; that prior to the filing of the petition, she had drawn the money out with the full knowledge and consent of the bank, acting under the advice of J. Mason Campbell, Esq., its attorney ; and further denying that the money was assets of the estate, and asserting her owner- ship of the same. The respondents demurred to the jurisdiction of the Orphans' Court to settle a disputed question like this, as they claimed by title paramount to the administrator.

On the 20th October, 1866, the Orphans' Court passed the order appealed from.

On the 25th of October, the petitioners prayed for an appeal, which was granted; and on the 26th inst., before obedience to the order was due, filed an appeal bond in the sum of $4,000, which bond was duly approved by the Court.

On the 8th of January last, the Court ordered that James Taylor and his wife should be attached for contempt, in not obeying the order of the 20th of October, and both parties were attached and brought before the Orphans' Court; and after showing cause, on the 4th of February, 1867, were sentenced to be imprisoned for contempt, in disobeying the order of October 20th, until discharged according to law.

The present application is intended to supersede all the proceedings subsequent to October 26th, when the appeal had been granted, and appeal bond had been given and approved.

The matter of the petition was argued before Bowie, C. J., and Bartol, Goldsborough and Weisel, J.

*Robt. J. Brent* and *J. L. Brent* for the petitioners.

1st. By the appeal all proceedings in the Orphans' Court, growing out of the order appealed from, were suspended.

It is contended that in virtue of sec. 43 of Art. 5 of the Code, p. 28, the Orphans' Court had jurisdiction to enforce its order notwithstanding the appeal. This section was intended to permit the Orphans' Court to proceed with the administration of an estate, in matters not affected by a pending appeal.

But after the appeal, there were no further administration in the Orphans' Court; and the appeal having been taken

and perfected before the order to pay the money into Court had been disobeyed, that order was suspended; and there can be no contempt in not obeying an order not in force and operative.

All the proceedings are to enforce this order, and no new proceedings are contemplated or initiated.

Again, if the money be paid into Court, then the order that has been appealed from is executed; and can a party be heard to come to this Court after he has executed a decree or judgment? Shall the judgment debtor pay the judgment, and after satisfaction is entered, appeal.

If the money is to be paid into Court, what did the Court approve the appeal bond for? Shall the Court hold the money and the appeal bond too? *Offutt vs. Gott*, 12 *G. & J.*, 386. *State vs. Williams*, 9 *Gill*, 172–6.

Again, if the money be paid into Court, and the petitioners reverse the order, the interest on the money paid in is lost; for who will repay this interest?

In an analogous case the Court of Appeals held, that Chancellor BLAND could not enforce the payment of money pending the appeal, and granted on petition a *supersedeas*. *Thompson vs. McKim*, 6 *H. & J.*, 302–334.

2nd. The Orphans' Court has no power to enforce its order for the payment of money by imprisonment.

It has the general powers of a Court of Chancery to enforce its decrees. See 231, *Art*. 93, *p*. 669 *of Code*.

Courts of Chancery have no power to enforce the payment of money by imprisonment. See 118, *p*. 96 *of Code*.

It is true *sec*. 238 *of Art*. 93, *p*. 671 *of Code*, confers power upon the Orphans' Court against any party concealing any part of the personal estate of a decedent, to enforce the delivery of the concealed property by attachment, imprisonment and sequestration; but construing this in reference to the power of a Chancery Court, this power of imprisonment cannot be exercised when the order is, in a

case of disputed title, like the present, merely an order to pay money ; and neither the order of the Court, nor the proceedings, show a case of concealed assets.

3rd. But if the Orphans' Court can imprison to enforce the payment of money, it cannot imprison the wife upon an order requiring that her husband and herself should jointly pay money. This is the obligation of the husband, and not of the wife, who is under his dominion and control. No personal obligation can be enforced against a *feme covert*, except through her separate property. *Burton vs. Marshall*, 4 *Gill*, 493. Many decisions might be quoted to illustrate this doctrine, but at present it is not deemed necessary. There is no case to be found where a married woman has been imprisoned for the non-payment of money, when the obligation rested alike on her and her husband.

No counsel appeared at the hearing in opposition to the petition.

Bowie, C. J., delivered the opinion of this Court.

Without anticipating the questions which may arise upon the consideration of the appeal from the principal order or decree in this case, we think the motion of the appellee for a *supersedeas* should be granted.

Whether the Orphans' Court had jurisdiction in the case in which the order appealed from was passed, is not now the subject of inquiry. The action of that Court now complained of is the further proceeding to enforce the original order while the appeal from it is pending. It is the opinion of this Court that the appeal stays all further proceedings.

How far the bond filed and approved of by the Orphans' Court has this effect, we do not now determine. Independently of it, the appeal itself stays the hands of the Court below until that shall have been heard and disposed of.

The language of this Court, upon a similar application in the case of *Thompson vs. McKim*, in 6 *H. & J.*, 334, is very apposite, viz : "It is emphatically in such a state of things that the power of this Court, to cause by special order a suspension of proceedings on the matter appealed from, should be exercised, and not lightly or in every cause ; but where the Court sees that if the order or decree appealed from should turn out to be wrong, the enforcement of it pending the appeal would produce an irreparable injury to the party appealing, it ought and will interpose to prevent such injury, or all the purposes of its institution as an Appellate Court of Chancery, will not be answered."

The answer filed in this case to the petition of the appellant, praying the interference and protection of this Court pending the appeal, takes the ground that the proceedings to enforce the order are authorized by the 43rd sec. of the 5th Article of the Code of Public General Laws.  That section cannot certainly be construed to contemplate any proceedings that would have the effect of executing the very order appealed from, unless the same can, "with propriety be carried on before the appeal is decided," and "the Orphans' Court can provide for conforming to the decision of the Court of Appeals, whether the said decision may eventually be for or against the appellant."

It is not necessary to point out the obvious modes in which the enforcement of the original order might have inflicted irreparable injury on the appellants, if the same should not be affirmed.  The mere restoration of the fund with interest, would be no indemnity against the consequences of its execution.  The proceedings contemplated by the section referred to, must therefore be of another character.

It may be that in a case in the predicament of this, no such further proceedings could be had.  But however that may

be, the order appealed from in this case, is to bring the money into Court, and certainly the party so ordered and appealing from it, is to be protected from complying with the order pending the appeal, in the absence of any statutory provision which would allow the cause below to proceed, notwithstanding the appeal. We will, therefore, grant the *supersedeas* asked for by the appellants.

Wherefore it is, this 2nd day of March, 1867, by the Court of Appeals of Maryland ordered, that all further proceedings in the Orphans' Court of Baltimore city, in the case of *Bruscup, Adm'r, vs. James Taylor & Margaret, his Wife,* be suspended and stayed until the appeal of said James and Margaret Taylor, from the orders and decrees heretofore passed in said cause, to wit, on the 20th of October, 1866, and on the 4th of February, 1867, be heard and determined.

RICH'D I. BOWIE,<br>
JAS. L. BARTOL,<br>
BRICE J. GOLDSBOROUGH,<br>
D. WEISEL.