WOLFE ET AL. *v.* TURNER, PERSONAL REPRESENTATIVE OF THE ESTATE OF PETER FRANKLIN WOLFE

[No. 115, September Term, 1972.]

*Decided January 11, 1973.*

648

*Motion for rehearing and modification filed February 8, 1973; rehearing denied February 26, 1973, modification of opinion granted in part and denied in part.*

The cause was argued before MURPHY, C. J., and MCWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Charles H. Reed* and *Stephen A. Tarrant* for appellants.

*Franklin Somes Tyng* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Three times in the recent past, we have had occasion to consider the fees allowed by orphans' courts to counsel for executors, *Riddleberger v. Goeller,* 267 Md. 64, 296

A. 2d 393 (1972); *Riddleberger v. Goeller,* 263 Md. 44, 282 A. 2d 101 (1971); *Lusby v. Nethken,* 262 Md. 584, 278 A. 2d 552 (1971). The controlling statute in each of these cases was Maryland Code (1957, 1964 Repl. Vol.) Art. 93, § 10. What distinguishes this case from those is that here, for the first time, we are considering the problem of the allowance of a fee to counsel for a personal representative in the light of § 7-602 of the new Decedents' Estates law enacted by Ch. 3, § 1 of the Laws of 1969. The references to that law which appear hereafter are to Code (1957, 1969 Repl. Vol., 1972 Cum. Supp.) Art. 93.

Peter Franklin Wolfe (Mr. Wolfe) died domiciled in Harford County, Maryland on 7 August 1970, survived by his widow, Juanita R. Wolfe (Mrs. Wolfe), and three daughters, Delores Gayle Hahn (Delores); Kay Marilyn Read (Kay) and Pamela Florence Harris (Pamela).

By a will executed on 2 April 1970, Mr. Wolfe had left his entire estate to his three daughters, and had named Benjamin M. Turner, Jr. (who is a member of the bar as well as a certified public accountant) as his executor. The will was admitted to administrative probate on 14 August. Three days later, Mrs. Wolfe, for whom no provision had been made in the will, renounced. Four months later, she filed a petition for judicial probate, which was granted. About a year later, she sought to have Turner removed as personal representative alleging that he had failed to file an inventory, state an administration account and make distribution within the times fixed by law. This effort failed.

There is ample evidence that the relationship between Mrs. Wolfe and Mr. Turner was not a happy one, possibly a result of the fact that Mrs. Wolfe was separated from her husband at the time of his death, and there was a pending alimony claim at that time.

After the administration had been open for nearly a year and a half, on petition of the personal representative, the orphans' court entered orders on 11 January

1972, allowing a fee of $6,750.00 to Mr. Turner's counsel and authorizing the stating of an administration account, withholding from distribution of $25,000.00 to be the subject of further accounting.

By letter dated 20 January 1972, written by counsel in behalf of Mrs. Wolfe and the three daughters, request was made for a hearing on the allowance of the fee. We think that this letter met the requirement of § 7-502, and as a consequence, the order did not become final, cf. Johnson v. Johnson, 265 Md. 327, 329-30, 289 A. 2d 318 (1972). On 1 February, there were filed in Mrs. Wolfe's behalf motions to rescind the order allowing the counsel fee and the order authorizing the retention of assets. Turner moved to dismiss on the ground that Mrs. Wolfe was not an "interested person" as the term is used in the Decedents' Estates law. The matter came on for hearing on 1 March, the colloquy being restricted to argument on the motion to dismiss, which the court granted. Mrs. Wolfe, Delores and Kay appealed.

In April, for reasons not at all clear to us, the court entered an order granting the hearing on the counsel fee requested by the 20 January letter written in behalf of Mrs. Wolfe and the three daughters, and after hearing testimony, on 2 May 1972, entered an order confirming the allowance of the fee.

Mrs. Wolfe, Delores, Kay and Pamela appealed.[1] Since the April hearing was predicated on a request made before the order of 11 January became final, under § 7-502, the second appeal would lie, Johnson v. Johnson, supra, 265 Md. at 329, except for the extraordinary circumstances of this case.

Mrs. Wolfe and her daughters raise three questions:

"(i) Did [she, as the], widow of the testator, who was not provided for in his will, have standing as an 'interested person' to challenge the counsel fee and the retention of assets?

1. Pamela's appearance as a participant is explained by the fact that she attained age 21 on 5 March 1972.

(ii) Was the counsel fee of $6,750.00 allowed by the Orphans' Court excessive?

(iii) Did the Orphans' Court abuse its discretion in permitting the personal representative to retain, in effect, the total net cash assets of $25,000.00?"

### (i)

Code Art. 93, § 1-101 (f) contains a definition providing, in pertinent part,

> "(f) *'Interested person'* means (1) a person named as executor in a will, and a person serving as personal representative after judicial or administrative probate; (2) a legatee in being, whether his interest is vested or contingent, until his legacy is paid in full, and (3) an heir even if decedent died testate except that an heir of a testate decedent ceases to be an 'interested person' after the register has given notice pursuant to § 2-209 (unless judicial probate is requested thereafter and then after the register has given notice pursuant to § 5-403 (a)). . . ."

Turner argues that Mrs. Wolfe, as a surviving widow, could only qualify as an interested person in her capacity as an heir, and that as such her qualification ceased after notice of an application for judicial probate was given under § 5-403 (a). As a consequence, he says that she lost the right given interested persons by § 2-102 to "at any time petition the court to resolve questions concerning the estate or its administration."

We do not see it quite that way. While a persuasive argument can be made that a renouncing widow for purposes of § 1-101 (f) is no less "a legatee in being" because she takes under the statute of distribution, § 3-102 (1), rather than by the terms of the will, we need not reach this point. On 1 March 1972, prior to the hear-

ing on that day, Delores and Kay joined their mother in challenging the order allowing the fee and the retention of assets. Delores and Kay joined with their mother in the appeal from the order of 1 March, and all three daughters joined Mrs. Wolfe in the appeal from the 2 May order.

Mrs. Wolfe's position is further buttressed by the fact that on 28 December 1970, Delores and Kay had assigned to their mother all right, title and interest in their father's estate, which leads us to an interesting alternative which we find it unnecessary to resolve: if the assignment is valid, Mrs. Wolfe steps into the shoes of Delores and Kay as a legatee. If the assignment is invalid, Delores and Kay, having joined their mother in the attack on the orders allowing the fee and authorizing the retention, had the standing necessary to maintain the action in the orphans' court.

As a consequence, even if Mr. Turner is right in his argument that Mrs. Wolfe lacked standing, the joinder of the daughters prevents this contention from being dispositive of the case. The granting of Turner's motion to dismiss was clearly erroneous, and the order of 1 March will be vacated.

### (ii)

As a threshold matter, we are virtually satisfied that when the appeal was entered from the order of 1 March 1972 the orphans' court could conduct no further proceedings as regards the allowance of the counsel fee, Code (1957, 1968 Repl. Vol.) Art. 5, § 11; *Jones v. Jones*, 41 Md. 354, 360-61 (1875); *Bruscup v. Taylor*, 26 Md. 410, 414 (1867), and lacked jurisdiction to hold the evidentiary hearing which resulted in the order of 2 May 1972.

Nevertheless, in the interest of judicial economy, we shall resolve the question on the record before us, in order to avoid a remand of the case for further proceedings, once the order of 1 March is vacated.

It seems to be conceded that the enactment of new Article 93 continued the existing law governing compensation of personal representatives, but introduced a new ingredient as regards counsel fees: the provision contained in § 7-602 (c) that in setting a counsel fee, the commissions allowed personal representatives should be taken into account, so that overall charges for administration shall be neither unfair nor unreasonable, Stiller and Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents,* 29 Md. L. Rev. 85, 113 (1969); and *see Riddleberger v. Goeller, supra,* 263 Md. at 55-56.

It seems to us that subject to the clear expression of legislative intent found in § 7-602 (c), the principles we discussed in *Lusby v. Nethken, supra,* 262 Md. at 585-87 and in *American Jewish Joint Distribution Comm. v. Eisenberg,* 194 Md. 193, 200, 70 A. 2d 40 (1949) have all the vitality they had prior to the 1969 revision. In brief, the power of an orphans' court to allow counsel fees is derived from statute. The allowance requires the exercise of discretion and judgment. An award will not be disturbed in the absence of proof of abuse of discretion, *Gradman v. Brown,* 183 Md. 634, 641, 39 A. 2d 808 (1944), which generally means that the fee allowed is shown to be so unreasonably small or so unreasonably high as to amount to an abuse. The principal elements to be considered in determining reasonableness are the amount involved, the character and extent of the services, the time employed, the importance of the question, the benefit to the estate and the customary charges made for similar services.

An application of these standards to the case at hand requires a discussion of certain pertinent facts. Mr. Wolfe's gross individual estate amounted to $43,856.47, the bulk of which consisted of his interest in P. F. Wolfe and Associates, Inc., a Subchapter S corporation, for which Turner acted as accountant.

Payments and disbursements (of which gross com-

missions allowed Turner as personal representative in the amount of $2,950.38 [2] and the challenged counsel fee of $6,750.00 were a part) aggregated $18,776.19, leaving a net distributable estate of $25,080.28, subject, however, to a 1% Maryland inheritance tax. We were told at argument that it was necessary for Turner's counsel to prepare and file a federal estate tax return because the value of certain real estate owned by the decedent and his wife had to be added to the assets of the probate estate for estate tax purposes, but that no tax was payable because of an unpaid balance of mortgage indebtedness.

Turner testified that he had prepared all of the income tax returns, but that he and his counsel had worked on the estate tax return together, because he did "not consider [himself] really a student to [sic] the Federal Estate Return." He acknowledged that no suits had been brought against the estate other than the challenges launched by Mrs. Wolfe, and that the estate had initiated no litigation.

Turner's need for counsel stemmed from his admission, ". . . I am not an estate lawyer. This is the first time that I have been an administrator. I do not consider myself competent in this field." There came a time when Turner and his counsel in turn retained a Baltimore law firm as counsel, which, according to Turner, was consulted on

> ". . . legal matters and matters of procedure. * * * As to how to handle the tax situations. What jeopardy we might run into, and how we should basically handle the estate and the maintenance of the corporation. The assumption of its assets and matters relating to our general overall procedures. * * * This case has many

---

2. These were subject to a State tax of $295.03, with the result that net commissions were $2,655.35. The commissions were fixed at the maximum rate permitted by § 7-601: 10% on the first $20,000.00, 4% on the value of the balance.

angles and many facts and we did not want to overlook any possibilities. It was our opinion that we should have some outside help at this particular stage."

Turner said that the Baltimore firm's fee of $750.00 had been paid by his counsel from the fee of $6,750.00. Turner acknowledges that his counsel had also been paid a fee of $996.00 by P. F. Wolfe and Associates, Inc., for services rendered the Subchapter S corporation during the period of administration.

The basic premise of Turner's petition for the allowance of a fee to his counsel is

"That during the course of administration said attorney has expended 257.2 hours of recorded office time in connection with the above services, (exclusive of time spent in legal services to P. F. Wolfe & Associates, Inc.), including numerous consultations and conferences with your Petitioner regarding the legal and tax consequences and ramifications of decisions relating to the administration and distribution of the above estate. Approximately 216 pages of testimony have been taken in hearings to date before this Honorable Court."

According to Turner, the 257 hours were charged at $30.00 per hour and rounded off at $6,750.00. Reliance was placed on that portion of the Statewide Suggested Minimum Fee Schedule adopted by the Maryland State Bar Association on 9 January 1971, which provides:

"3. Advice, consultation and Hourly Rate:

Minimum hourly rate, based on experience of attorney in accordance with following schedule:

| | |
|---|---|
| 0-5 years experience | $25.00 |
| Over 5 years experience | 30.00" |

It might have been helpful if there had been shared

with the orphans' court Section 15 of the Minimum Fee
Schedule dealing with estate administration [3] which we

3. "In the administration of a decedent's estate there are ac-
tually two types of services to be performed, to wit, (a) the
non-legal administration services which are often assigned by the
testator to a lay executor, and (b) the activities and decisions of
a legal nature related thereto which are traditionally performed
by 'the lawyer for the estate.' The distinction between the two in
the course of an administration is often difficult to preserve. And
this is particularly true since (except where a professional execu-
tor is used) the lawyer is frequently called on to perform a great
deal of the non-legal, or purely administrative, work.

"In earlier days, when estates were less complicated and tax
problems were relatively insignificant, the 'administrative services'
represented the major portion of the work, with the legal services
being relatively unimportant. Today, in view of the complex nature
of many forms of property rights, and in view of the ever in-
creasing importance of post mortem estate and tax planning, these
positions have actually become reversed.

"In addition, estates which differ in size and composition may
differ even to a greater extent in the administration, as well as
legal, attention that is required for the proper and complete dis-
position of each individual's assets, whether according to specific
testamentary instructions, or by intestacy, or under non-probate
arrangements of various sorts.

"With the above as a guide, it is suggested that the duties of
lawyers in the settlement of estates be classified into three cate-
gories, one as the absolute minimum type of case, with no complica-
tions, the next as the normal case, and the third as the extra-
ordinary one.

"But, in each case it is essential also to remember that Canon
12 of the Canons of Professional Ethics of the American Bar As-
sociation should always be carefully weighed in establishing the
ultimate charge for the lawyer.

"(1) For the 'simple' estate, where the administration is un-
complicated and easily performed with a minimum of effort, so
that the allowance for executor's commissions should also be at a
minimum figure, the following amounts are recommended as fair
and reasonable as minimum fees:

| | | |
|---|---|---|
| Estates of up to $5,000 | up to | 150 |
| Estates of $5,000 to $15,000 | | 250 |
| Estates of $15,000 to $60,000 | | 500 |
| Estates of $60,000 to $120,000 | | 1,000 |
| Estates in excess of $120,000 | | 1,500 |

"The substantial increase for estates in excess of
$60,000 is to reflect the added work and responsibility in
connection with the requisite estate tax returns, plus the
usually more complicated income tax returns (for dece-
dent and estate) at this level, and all decisions to be made
in connection therewith (e.g., as to how to take deduc-
tions).

"(2) As a guideline for the 'normal' estate, that is, where the
work required is more than the minimum effort for the estates
described in (1) because the assets constituting the decedent's
gross estate, and the work required in the administration thereof,

cite, not with the idea of giving it our *nihil obstat,* but rather as indicative of what is customarily charged for similar services.

After carefully reviewing the record, we are satisfied that the Wolfe estate, which may have seemed complex to Turner, rose no higher than the category of the normal estate. There was no litigation in the ordinary sense, nor any valuation problems. The allowance of a fee in excess of an amount equivalent to one-half of net commissions, or $1,327.67 to which the $750.00 consultant's fee might properly have been added, or $2,077.67, was clearly an abuse of discretion.

It is equally clear that Turner was derelict in his failure to comply with the statutory mandate that the commissions allowed a personal representative and the fee

---

relating both to probate and non-probate assets, might be called the 'normal' estate, with the 'normal' legal problems:

Based on the maximum allowable executor's commission, after deducting therefrom the State tax on executor's commissions, an amount equal to—

For probate estate up to $250,000 ............ ½ of such executor's commissions

For probate estate in excess of $250,000 .......... ½ of such executor's commissions for the first $250,000 and ¼ of such executor's commissions for the amount in excess of $250,000

"(3) Additional compensation, over and above that recommended in either (1) or (2), should be considered fair and reasonable where the attorney is called upon for 'unusual services' during the administration of the estate, such 'unusual services' to include, but not be limited to—

    (i) representation of the estate in the prosecution or the defense of an action at law or in equity, or in a proceeding before an administrative body;

    (ii) services rendered in connection with any asset owned by the decedent or taxed in his estate, which is not included in any inventory of the personal estate; and

    (iii) extraordinary services rendered in connection with the valuation of any asset for tax purposes, or in connection with the audit of estate or inheritance tax returns.

"Finally, whenever more than the minimum fee set forth in (1) is to be requested, it is suggested that the executor and the attorney submit to the Court, contemporaneously and in writing, their separate requests for compensation, with the attorney's petition showing in reasonable detail the services rendered 'to the estate and to the personal representative' (Art. 93, Section 10) so that the Court will have all relevant facts before making its decision as to what is to be the total fair and reasonable cost for the complete administration of the particular estate."

allowed his counsel should be considered together by the orphans' court. Had he disclosed this in his petition, the revelation that total expenses of administering a $43,-000.00 estate would amount to $9,700.00 could well have been regarded as unreasonable or unfair. For this reason, we see no warrant for the allowance of additional compensation for this appeal, which might well have been avoided had there been compliance with § 7-602 (c).

If Turner believes that his counsel is not adequately compensated by an allowance of $2,077.67, he can supplement the fee from his own commissions, which were allowed at the maximum permissible rate, *American Jewish Joint Distribution Comm. v. Eisenberg, supra,* 194 Md. at 202.

We have carefully examined the time sheet kept by Turner's counsel, and find that much of it relates to correspondence with banks and insurance companies, arrangements with appraisers, and telephone conversations and conferences with Mr. Turner relating to matters of a purely ministerial nature. That an inordinate amount of time was involved may well have been the result of Turner's admitted lack of expertise. Should further support be needed for the result we reach, it may be found in Judge Smith's detailed discussion, for the Court, in *Riddleberger v. Goeller, supra,* 263 Md. at 52-58. As we there noted, at 57-58, if an attorney is to be compensated from the estate for doing routine work, it might well be that the personal representative would be paid for doing nothing.

Appellant finds comfort in *Lusby v. Nethken, supra,* 262 Md. 584, where we approved the allowance of a $6,400.00 counsel fee for extensive services rendered in a caveat proceeding, despite the fact that the fee was equivalent to about 44% of the value of probated assets.[4] That the appropriateness of a counsel fee cannot

4. Lusby v. Nethken, 256 Md. 469, 260 A. 2d 640 (1970); Nethken v. Lusby, 262 Md. 588, 278 A. 2d 550 (1971).

be determined by simple arithmetic is nowhere better illustrated than in *Riddleberger v. Goeller, supra,* 263 Md. 44, where we reduced from $3,250.00 to $500.00 the fee allowed in a $71,000.00 estate. In *American Jewish Joint Distribution Comm. v. Eisenberg, supra,* 194 Md. 193, involving a $250,000.00 estate, a $10,000.00 fee was reduced to $4,000.00. This is an area where adherence to standards, and not reliance on mere numbers, must be the controlling factor.

### (iii)

The final question is whether the orphans' court abused its discretion when, on 11 January 1971, it entered an order authorizing Turner, as personal representative, to retain the sum of $25,000.00 for further accounting, pending audit of estate and income tax returns. This had the practical effect of withholding from distribution the entire estate except for $80.28, which would be paid to Mrs. Wolfe and the three daughters.

From a purely technical standpoint, this issue is only tangentially before us, because while the appellants sought to raise it at the March hearing, the challenge was, as we have said, improperly dismissed by the order of 1 March 1972. To avoid further contention, we shall discuss it nonetheless.

Turner gave as his reason for the proposed retention the fact that neither Mr. Wolfe's personal income tax liability, nor the estate and income tax liability of the estate, nor the income tax liability of the Subchapter S corporation had been finally determined.

Clearly, Turner was entitled to act within reason to insulate himself from the possibility of personal liability. It may well be that his apprehensions spiralled far beyond the limits of any possible liability, but he can hardly be faulted for an excess of caution, if he acted in good faith, and we cannot say that he did not. In any event, the entry of an order would have been within the orphans' court discretion, and we see no abuse.

At argument, we were told that the audit of the tax returns has been completed, which makes the whole matter of retention academic. There is now no reason why a final account cannot be stated and distribution made promptly upon receipt of the mandate of this Court.

> *Order of 1 March 1972, dismissing motions of Juanita R. Wolfe et al. reversed, and case remanded for entry of an order authorizing r e t e n t i o n of $25,000.00 pending the stating of a final administration account and an order modifying allowance of counsel fee by reducing amount of fee from $6,750.00 to $2,- 077.67. Order of 2 May 1972 vacated. Costs in both appeals to be paid from assets of estate of Peter Franklin Wolfe in hands of Benjamin M. Turner, Jr., personal representative.*