575 A.2d 776

The NATIONAL WILDLIFE FEDERATION

v.

Charles W. FOSTER, Personal Representative of the Estate of Hazel V. Reynolds.

No. 1615, Sept. Term, 1989.

Court of Special Appeals of Maryland.

June 28, 1990.

James A. Dunbar (Venable, Baetjer & Howard, on the brief), Baltimore, for appellant.

George B. Huckabay (Edward T. Love and Ortman, Love & Huckabay, on the brief), Bethesda, for appellee.

Argued before ALPERT, ROSALYN B. BELL and FISCHER, JJ.

ALPERT, Judge.

Hazel V. Reynolds, a domiciliary of Montgomery County, died on May 2, 1987, leaving an estate worth more than a

million dollars. The estate included, inter alia, four improved real properties in Washington, D.C. In her last will and testament Ms. Reynolds named as personal representative, Charles W. Foster (Personal Representative). She authorized and directed the Personal Representative to sell all of her properties in Washington "as soon as may be practicable after my death upon such terms and at such prices as my Personal Representative, in the exercise of his sole and absolute discretion, may deem fair and prudent."

After receiving letters of administration from the Register of Wills for Montgomery County, the Personal Representative filed the appropriate documents in the Superior Court of the District of Columbia. The Personal Representative also enlisted a real estate appraiser, J. Morgan Little, whose name appeared on a list of qualified real estate appraisers maintained by the Register of Wills for the District of Columbia. Little's date-of-death appraisals of the four properties were as follows:

| Property Address | Appraised Value |
|---|---|
| 831 Ingraham Street, N.W. | $ 60,000.00 |
| 3532 T Street, N.W. | 140,000.00 |
| 3602 T Street, N.W. | 125,000.00 |
| 3629 S Street, N.W. | 145,000.00 |
| TOTAL | $470,000.00 |

With assistance from Shirley's Realty Company as to 831 Ingraham Street, N.W., and Millicent Chatel Associates, Inc. (Millicent Chatel) as to the other three properties (the subject properties), the Personal Representative negotiated contracts to sell the properties for the following prices:

| Property Address | Sales Price |
|---|---|
| 831 Ingraham Street, N.W. | $ 62,500.00 |
| 3532 T Street, N.W. | 159,600.00 |
| 3602 T Street, N.W. | 158,500.00 |
| 3629 S Street, N.W. | 162,500.00 |
| TOTAL | $543,100.00 |

After the payment of real estate commissions and, presumably, other costs, the net proceeds from the sales of the properties were as follows:

| Property Address | Net Proceeds |
|---|---|
| 831 Ingraham Street, N.W. | $ 61,662.22 |
| 3532 T Street, N.W. | 149,558.82 |
| 3602 T Street, N.W. | 146,546.54 |
| 3629 S Street, N.W. | 150,994.34 |
| TOTAL | $508,761.92 |

After the sale of the properties, the Register of Wills for Montgomery County apparently approved the Personal Representative's First and Final Account. The Personal Representative then distributed the specific bequests and devises designated in Ms. Reynolds's will. Finally, the Personal Representative disbursed $350,000 to the National Wildlife Federation (NWF) as residuary legatee, retaining approximately $55,000, apparently pending receipt of a federal estate tax closing letter from the Internal Revenue Service. The First and Final Account, however, indicated a payment to NWF of $404,210.63.

After receiving the Personal Representative's account, NWF concluded that the sales prices of the houses had been too low and, through counsel, it attempted to convince the Personal Representative to file a claim against Millicent Chatel for breach of its contractual and fiduciary duties to the estate. To support its position that the subject properties had been under-appraised and under-sold, NWF apparently provided the Personal Representative with data about six 1987 sales of properties that it asserted were comparable to the subject properties. According to the Personal Representative, he determined that the six properties were "significantly larger and in substantially better condition than the subject properties." The Personal Representative then told NWF that he would not take action against Millicent Chatel.

The Personal Representative received the estate tax closing letter in late August 1988. Before receiving the letter,

however, he apparently learned that NWF was contemplating filing suit against him, for failing to obtain the highest prices for the subject properties, unless he agreed to institute litigation against Millicent Chatel. Rather than disbursing to NWF the approximately $55,000 he had retained after the sale of the Washington properties, the Personal Representative held onto the money to cover legal fees and expenses he might incur if NWF filed an action against him. He also engaged a Bethesda law firm to represent him.

On April 24, 1989, NWF filed a complaint against the Personal Representative and Millicent Chatel in the Superior Court of the District of Columbia. In the complaint, NWF alleged that the Personal Representative breached his fiduciary duty by (1) failing to take action against Millicent Chatel; (2) acquiescing in Millicent Chatel's breaches of fiduciary duty; (3) failing to verify personally the market values of the properties and leaving the sales prices blank to be filled in by Millicent Chatel; (4) failing to offer a particular one of the three subject properties for sale to the public, rather than to a Millicent Chatel employee; and (5) withholding the remaining $55,000. NWF also alleged that the Personal Representative had been negligent and breached the standard of care he owed to the estate by acquiescing in Millicent Chatel's breaches of contract and of fiduciary duty. The Personal Representative filed an answer and a counterclaim, in which he alleged that NWF sued him in bad faith. The Superior Court apparently granted NWF's motion to dismiss the counterclaim.

The Personal Representative filed a Petition to Reopen the Estate in the Circuit Court for Montgomery County, sitting as the Orphans' Court, on June 2, 1989. In the petition he sought four forms of relief:

(1) the reopening of the estate;

(2) permission to restate his First and Final Account and to file periodic subsequent accounts showing the liti-

gation expenses incurred in defending the claim against him;

(3) permission to pay himself $1,532.60 that he had already paid his defense counsel for services rendered *before* NWF filed its complaint (pre-litigation fees and expenses); and

(4) permission to pay $3,434.95 in initial legal fees and expenses incurred *after* NWF filed the complaint (litigation fees and expenses).

Along with the Petition to Reopen the Estate, the Personal Representative filed copies of NWF's complaint, the Personal Representative's answer and counterclaim, and the billing statements the Personal Representative had received from defense counsel for the pre-litigation and litigation fees and expenses.

Judge Paul H. Weinstein granted the Personal Representative's petition in full on June 21, 1989. Because the Personal Representative sought attorneys' fees, however, NWF was entitled to 20 days from the date of the June 2 petition in which to request a hearing pursuant to Md. Est. & Trusts Code Ann. § 7–502. On June 22, NWF filed a timely request for such a hearing. When it discovered that Judge Weinstein had mistakenly issued the premature order granting the Personal Representative's petition, NWF filed a Motion to Reconsider Order Authorizing Payment of Attorneys' Fees. The motion's introductory language stated that NWF "moves that this Court reconsider and rescind its order dated June 21, 1989, insofar as that order authorizes the Personal Representative to *reimburse* himself from the estate's funds for certain attorneys' fees that he has incurred." (Emphasis added.) In conclusion, NWF requested that the court "reconsider its order of June 21, 1989, granting the Personal Representative's request to use estate assets to *pay* his attorneys' fees, rescind that order, and grant NWF a hearing on the merits of that request for attorneys' fees." (Emphasis added.)

Along with its motion to reconsider, NWF filed an order, drafted by its counsel, which read as follows:

> Upon consideration of the Motion of National Wildlife Federation to reconsider this Court's order of June 21, 1989, granting the Personal Representative leave *to reimburse* himself for attorneys' fees from funds of the estate, it is, this ___ day of _____, 1989, hereby ordered that National Wildlife Federation's Motion to Reconsider is granted, and that this Court's order of June 21, 1989 be, and hereby is, rescinded insofar as it permits the Personal Representative *to reimburse* himself for attorneys' fees, and that a hearing on the Personal Representative's request for attorney's fees is hereby scheduled for _____, 1989.

(Emphasis added.) Judge Weinstein signed the order on June 28 exactly as counsel for NWF drafted it. Someone, apparently Judge Weinstein, also wrote on the June 21 order the following: "Order vacated regarding fees. 6/28/89."

At the requested hearing before the orphans' court, held on September 20, 1989, Judge Irma R. Raker heard arguments from counsel for both parties. Counsel for the Personal Representative argued that because the June 28 order used the word "reimburse," it reopened only the issue of his request for payment of pre-litigation fees, which the Personal Representative had already paid to his defense counsel out of personal funds. According to defense counsel, the actual litigation fees and expenses, incurred after NWF filed suit in April 1989, were not at issue because the Personal Representative had not yet made payment on them and thus could not be "reimbursed" for them.

Counsel for NWF countered that he had simply drafted the phrase "insofar as it permits the Personal Representative to reimburse himself for attorneys' fees" inelegantly. The following colloquy ensued:

> Mr. Dunbar [Counsel for NWF]: [M]y request, and the intent of my motion for reconsideration, which I think was granted, at least in effect, was to put the entire

attorneys fees request, whether prior reimbursement or post-litigation payment, in issue. The issue is the same, the legal issue is the same with regard—

THE COURT: I don't read Judge Weinstein's order that way. You may not like how you drafted it, but he signed your order, and it is limited to a hearing on the personal attorneys—request for attorneys fees. He only rescinded it insofar as it permits the PR to reimburse himself for attorneys fees.

. . . .

MR. DUNBAR: Your Honor, I would just submit, very briefly, that my client should not be prejudiced by my sloppiness, if that is what it was, in drafting the order; that the idea, the reason the order was vacated was—

THE COURT: I am dealing with Judge Weinstein's order that you gave him, that he signed. That is all I am dealing with.

MR. DUNBAR: In that case, Your Honor, I would like to move now that we reconsider, as well, the portion of Judge Weinstein's order vacating the $3400.

THE COURT: I am not going to do that, because I am not going to vacate Judge Weinstein's order.

At the conclusion of the hearing, Judge Raker granted the Personal Representative's request for payment of his pre-litigation fees from the estate's assets. The judge also refused to consider NWF's request that she order the Personal Representative to distribute the remaining $55,000 to NWF, saying, "I don't think that is before me." The next day, September 21, Judge Raker signed a written order granting the Personal Representative leave to "reimburse" himself the $1,532.60 he had paid defense counsel for pre-litigation legal fees and expenses.

Fourteen days later, on October 5, NWF filed a Notice of Appeal, which stated:

Please enter an appeal to the Court of Special Appeals from the Order dated September 21, 1989 by the Circuit Court of Montgomery County, sitting as the Orphan's

Court (Raker, J.), authorizing the personal representative to reimburse himself $1,532.50 for attorney's fees allegedly incurred by him and permitting the personal representative to restate an account so as to reflect the above-mentioned reimbursement; and from the Court's refusal, in open court, to reconsider the Order of the Circuit Court for Montgomery County, sitting as the Orphan's Court (Weinstein, J.), dated June 21, 1989, insofar as that Order permits the Personal Representative to pay from the estate $3,434.95 in attorneys' fees allegedly incurred by him, and to restate his account to reflect that payment; and from the Court's refusal, in open court, to consider or act upon the request of the National Wildlife Federation for an Order requiring distribution of the estate's assets to it, as the sole beneficiary. . . .

The Personal Representative moved to strike the notice of appeal, pursuant to Md.Rule 8–203(a)(1), on the grounds that the 30–day period for noting an appeal to Judge Weinstein's June 21 order, as modified by that judge's June 28 order, had expired. The Personal Representative also argued that none of the three orders—June 21, June 28, or September 21—was an appealable interlocutory order. NWF filed an opposition to the motion to strike the notice of appeal, requesting a hearing on the Personal Representative's motion to strike and requesting that Judge Weinstein be specially assigned to the motion "because the motion to strike involves the interpretation of orders entered by him."

On November 24, without explanation or a hearing, Judge Paul McGuckian granted the Personal Representative's motion to strike NWF's notice of appeal. NWF then filed a notice of appeal from Judge McGuckian's order on December 19. On appeal, NWF presents three arguments:

I. NWF's appeal is properly before this court, and the Orphans' Court erred in striking NWF's [first] notice of appeal.

II. Mr. Foster did not and could not establish that his attorneys' fees were incurred in good faith and with

just cause, and the court's approval of those fees was improper.

III. Mr. Foster should be required to distribute the remainder of the estate to NWF.

## I. *Appealability*

Apparently, the Personal Representative does not dispute that Judge McGuckian's November 24 order striking NWF's first notice of appeal was appealable. The question, then, is whether that order was correctly issued. In other words, was NWF's October 5 notice of appeal an appeal from an appealable order or orders?

 To answer this question, we first address the Personal Representative's argument that the October 5 notice of appeal was defective because it appealed from Judge Weinstein's June 21 and June 28 orders and thus was untimely under Md.Rule 8–203(a)(1). We disagree. NWF could not have appealed from the June orders even if it had wanted to because the June 28 order, which its attorney drafted verbatim, was a wholly favorable judgment. An appeal from such a judgment is impermissible. *Paolino v. McCormick & Co.*, 314 Md. 575, 579, 552 A.2d 868 (1989). Moreover, NWF's mentioning of the June orders in the October 5 notice of appeal did not amount to an "appeal" from those orders. NWF simply appealed from Judge Raker's refusal, in open court on September 20, to reconsider portions of the June 21 order. The appeal, therefore, was from Judge Raker's decision, made only fifteen days before the October 5 notice of appeal, and not from Judge Weinstein's two orders.

 The Personal Representative's other argument in support of Judge McGuckian's striking of the October 5 notice of appeal is that the September 21 order was not an appealable interlocutory order as defined by Md.Cts. & Jud.Proc.Code Ann. § 12–501. Specifically, he argues that the order is not a final judgment because of the ongoing litigation in the District of Columbia court "and the certain-

ty that the Personal Representative will seek additional authority from the Orphans' Court on an interim basis to pay and/or reimburse for subsequent legal fees and expenses." We disagree with this argument as well. Section 12–501 permits a party to appeal to this court "from a final judgment of an orphans' court." Maryland Est. & Trusts Code Ann. § 7–502(b) provides that when a personal representative requests permission to pay attorneys' fees out of the estate's assets,

> [u]nless there was fraud, material mistake, or substantial irregularity in the proceeding, or a request for a hearing is filed within 20 days of the sending of the notice, any action taken by the court on the petition is *final and binding* on all persons to whom the notice was given.

(Emphasis added.)

Judge Raker's September 21 order clearly permitted the payment of attorneys' fees out of the estate's assets. The judge's order thus was "final and binding" under § 7–502(b) and, accordingly, appealable under § 12–501. *See also Wright v. Nuttle*, 267 Md. 698, 701, 298 A.2d 389 (1973) (appeal normally lies from order granting or denying allowance of counsel fee). We therefore conclude that Judge McGuckian erred in striking NWF's October 5 notice of appeal.

## II. *Attorneys' Fees*

Maryland Est. & Trusts Code Ann. § 7–603 provides: When a personal representative or person nominated as personal representative defends or prosecutes a proceeding in good faith and with just cause, he shall be entitled to receive his necessary expenses and disbursements from the estate regardless of the outcome of the proceeding.

If the D.C. case had been resolved before Judge Raker approved the granting of the attorneys' fees, our task of evaluating her decision would be relatively simple. With all or part of the record of the D.C. case before us, we could conclude intelligently whether the proceeding was defended

"in good faith and with just cause." Had the Personal Representative prevailed, then we could conclude that he did defend in good faith and with just cause. If, on the other hand, the D.C. court found in favor of NWF, that "outcome" notwithstanding, we would still have before us a record from which to determine good faith and just cause.

Unfortunately, the D.C. court has not resolved the dispute. We thus are faced with a situation in which the trial court granted the Personal Representative's request for attorneys' fees on an interim basis. We have discovered no Maryland cases addressing the propriety of such an award, and there is a dearth of authority from other jurisdictions. *See Duggan v. Keto,* 554 A.2d 1126, 1142–43 (D.C.App.1989) (trial court did not err in awarding personal representative's attorneys' fees before underlying litigation had ended); *compare Matter of Estate of Birnbaum,* 112 A.D.2d 778, 113 A.D.2d 1032, 492 N.Y.S.2d 275, 277 (1985) (trial court erred in awarding interim attorneys' fees for legal services in defense of breach of fiduciary duty charges); 31 Am. Jur.2d *Executors and Administrators* § 472, at 238 (1989) (fiduciary charged with breach of fiduciary duties may not be awarded interim attorneys' fees).

While the allowance of counsel fees by an orphans' court requires the exercise of discretion and "will not be disturbed in the absence of proof of abuse of discretion," *Wolfe v. Turner,* 267 Md. 646, 653, 299 A.2d 106 (1973), neither Maryland case law, the Maryland Code, nor the Maryland Rules are instructive in determining how the court's discretion is to be exercised in awarding interim attorneys' fees to personal representatives. We therefore must formulate our own set of guidelines. Our action in this regard is not without precedent. Indeed, when faced recently with a lack of authority on the issue of when it is proper for insurers to file declaratory judgment actions regarding tort suits against their insureds, where there is a dispute as to coverage, the Court of Appeals created new guidelines for trial courts to follow. *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 264, 572 A.2d 154 (1990). Rather

than permit a separate declaratory judgment action after the tort suit in a conflict of interest situation, the court created a new procedure under which coverage disputes are resolved in declaratory proceedings, as part of the tort case, but are not initiated until after the jury's verdict or the court's decision as to liability.

In fashioning our guidelines, we find a useful model in the factors that courts consider in determining whether to grant interlocutory injunctions. As we said in *Teferi v. Dupont Plaza Associates*, 77 Md.App. 566, 551 A.2d 477 (1989), trial courts making such a determination should consider the following:

(1) the likelihood that the plaintiff will succeed on the merits;

(2) the "balance of convenience" determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal;

(3) whether plaintiff will suffer irreparable injury unless the injunction is granted; and

(4) the public interest.

*Id.* at 578, 551 A.2d 477 (citing *Department of Transp. v. Armacost*, 299 Md. 392, 404–05, 474 A.2d 191 (1984); *State Dep't v. Baltimore County*, 281 Md. 548, 554, 383 A.2d 51 (1977)).

The three factors in our new test for awarding interim attorneys' fees to personal representatives are quite similar to the first three factors of the interlocutory injunction test. The first, and most important, factor is whether there is prima facie evidence that the personal representative will succeed on the merits and thus is defending or prosecuting the underlying action in good faith and with just cause. Like the judge in an interlocutory injunction hearing, the orphans' court must attempt to predict the outcome of the trial on the merits. The stronger the prima facie evidence of good faith and just cause, the less emphasis the orphans' court will place on the other two factors in

the test. Conversely, the weaker the prima facie evidence, the more emphasis the court will place on the second and third factors. If the personal representative utterly fails to present prima facie evidence of good faith and just cause, the orphans' court shall deny the interim attorneys' fees without even considering the other two factors in the test.

We create this "super" first factor to avoid the injustice that would occur each time a meritorious personal representative, who would have been granted attorneys' fees at the end of litigation pursuant to § 7–603, is prevented from pursuing the litigation to its conclusion by an inability to pay attorneys' fees as they arise. In the instant case, for example, the Personal Representative had accrued nearly $5,000 in attorneys' fees by the time he filed his Petition to Reopen the Estate in June 1989. That figure may have increased substantially since then. Justice would be served poorly if the Personal Representative has breached no fiduciary duty yet is unable to establish that in the D.C. court because he cannot pay these fees.

Conversely, we are mindful of the harm that could result if a personal representive is permitted to use the estate's assets to defend or prosecute a claim in bad faith and without just cause. Not only might the estate be dissipated and the legatees unable to recover the money paid in attorneys' fees from the personal representative at the conclusion of the underlying litigation, but such meritless litigation also causes an unnecessary drain on the judicial system. It is for these reasons that we direct orphans' courts to require prima facie evidence of good faith and just cause before granting interim attorneys' fees.

The second factor is the "balance of convenience," similar to the balance performed by hearing judges in interlocutory injunction cases. The orphans' court judge must determine from the evidence whether greater injury would be done to the personal representative by denying the interim attorneys' fees than would be done to the party opposing the interim attorneys' fees if such fees were granted. The third factor in the test is whether the party opposing the

interim attorneys' fees, like the plaintiff requesting the interlocutory injunction, will suffer irreparable injury if the interim fees are awarded.

■ Having set out a three-factor test for determining when to award interim attorneys' fees to personal representatives, we now address the type of hearing required by that test. It is clear that the party opposing a personal representative's request for interim attorneys' fees is entitled to an evidentiary hearing. *Cosden v. Mercantile–Safe Deposit & Trust Co.,* 41 Md.App. 519, 554, 398 A.2d 460, *cert. denied,* 285 Md. 728 (1979), *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 308 (1979). The question is how extensive that hearing should be. We do not suggest that the entire underlying action should also be tried by the orphans' court. While broad discretion should be vested in the trial judge as to the quality and quantity of the evidence (*e.g.,* affidavits, counter-affidavits, and documentary evidence might be used), the personal representative or other party seeking interim fees must be subject to examination and cross-examination.

Judge Raker did hold a hearing, in which counsel for the parties were permitted to argue, before deciding to award interim attorneys' fees to the Personal Representative. Judge Raker also must have had before her the record, which included the Personal Representative's Petition to Reopen the Estate. Attached to the petition were NWF's complaint; the Personal Representative's answer and counterclaim, including the amounts at which his appraiser valued each of the four D.C. properties; and the bills for legal fees from the Personal Representative's counsel.

Counsel for NWF argued at least twice during the hearing that an evidentiary hearing had to be held to determine whether the Personal Representative incurred the attorneys' fees in good faith and with just cause. Judge Raker granted the interim attorneys' fees without holding such a hearing. She heard no testimony from either the Personal Representative or an NWF spokesperson. She also admit-

ted no evidence beyond what already was part of the Petition to Reopen the Estate. Based upon the test we have created today, we believe an evidentiary hearing was required and its denial was an abuse of discretion. We thus remand to the orphans' court so that such a hearing may be held. We do not decide what, if any, effect the allowance, vel non, of interim attorneys' fees would have on a claim made after the D.C. case is decided for reimbursement of fees.

We also direct the orphans' court on remand to address both the pre-litigation attorneys' fees and the actual litigation fees. It is clear from NWF's Motion to Reconsider Order Authorizing Payment of Attorneys' Fees that it opposed the awarding of *any* attorneys' fees on an interim basis. It also is apparent to us that Judge Weinstein intended to vacate his entire award of attorneys' fees when he, or someone apparently directed by him, wrote on the June 21 order, "Order vacated regarding fees." The fact that counsel for NWF used the word "reimburse" rather than "pay" in the order he drafted for Judge Weinstein's signature did not indicate that he was concerned only with the pre-litigation fees already paid by the Personal Representative. Nor did Judge Weinstein's signing of the order mean that he intended to keep in place his June 21 order as to the actual litigation expenses.

### III. *Distribution of the Remaining $55,000*

■ NWF's final argument is that in failing to distribute the remaining estate assets, totalling approximately $55,-000, the Personal Representative breached his fiduciary duty under Md. Est. & Trusts Code Ann. § 7–101(b). We disagree. That section provides that:

[u]nless the time of distribution is extended by order of court for good cause shown, the personal representative shall distribute all the assets of the estate of which he has taken possession or control within the time provided in § 7–305 for rendering his first account.

In his June 21 order, Judge Weinstein granted the Personal Representative's request for permission to restate his First and Final Account. Judge Weinstein did not address this portion of the order in his June 28 order. In addition, he (or someone else at his direction) wrote on the June 21 order by hand: "Order vacated as to fees." Again, there was no mention of the Personal Representative's request for leave to restate the account. Thus, the June 21 order remained effective on this issue even after Judge Weinstein issued his June 28 order.

Judge Weinstein's granting of the Personal Representative's request clearly constituted a court order extending the time of distribution of the estate's assets. We also believe there was "good cause shown" for such an extension of time. The Personal Representative said in his Petition to Reopen the Estate that NWF had filed a complaint against him and that he wished to retain the remaining assets to cover legal fees and litigation costs incurred in defending against the complaint. In *Wolfe v. Turner, supra,* the Court of Appeals approved the withholding of estate assets where the personal representative retained $25,000, virtually the entire estate, for further accounting, pending the audit of estate and income tax returns. According to the court,

> Clearly, [the personal representative] was entitled to act within reason to insulate himself from the possibility of personal liability. It may well be that his apprehensions spiralled far beyond the limits of any possible liability, but he can hardly be faulted for an excess of caution, if he acted in good faith, and we cannot say that he did not....

267 Md. at 659, 299 A.2d 106.

Similarly, we cannot say that the Personal Representative in the case before us failed to act in good faith in retaining the estate's assets. Thus, he was entitled to retain the remaining $55,000 "to insulate himself from the possibility of personal liability" for the legal expenses he has incurred, and will continue to incur, in defending against NWF"s

claim. Neither Judge Weinstein nor Judge Raker erred in permitting the Personal Representative to do so. If the orphans' court, presently or after the D.C. case is decided, determines to award counsel fees, then the money will be readily available. If counsel fees are presently or ultimately denied, then obviously the remaining funds shall be remitted to NWF.

JUDGMENT OF THE ORPHANS' COURT FOR MONTGOMERY COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO ABIDE THE RESULT.