862 A.2d 1050

**William Christopher PETERSON, Personal Representative of the Estate of Elsie Virginia Kinsey**

v.

**ORPHANS' COURT FOR QUEEN ANNE'S COUNTY, Maryland.**

**No. 01552, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 7, 2004.

138

Elise Davis, Easton, for Appellant.

Gloria Wilson Shelton (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, SHARER and CHARLES E. MOYLAN JR. (Specially assigned), JJ.

HOLLANDER, Judge.

William Peterson, appellant, Personal Representative of the Estate of Elsie Kinsey, challenges various orders issued by the Orphans' Court for Queen Anne's County, appellee, in which the court, *inter alia,* reduced appellant's commissions, *sua sponte;* refused to approve the entire award of attorney's fees requested for Elise Davis, Esquire, counsel for the Es-

tate;[1] and denied certain petitions to impute monies to Roger E. Pleasanton, Kinsey's surviving spouse.

Appellant presents four questions, which we quote:

I.    Did the court below err as a matter of law when 15 months after the Petitions for Attorneys Fees and P[ersonal] R[epresentative] Commissions had been approved as well as the Account, without Petition of any interested person, modified the Order pertaining to P.R. commissions and changed the amount approved from $15,787.75 to $5,787.75?

II.   Was it an abuse of discretion by the court below when it failed to impute monies to the surviving spouse for attorney[']s fees and court costs incurred by the Estate because of his failure to comply with the settlement agreement previously approved by the court?

III.  Was it an abuse of discretion by the court below when it failed to approve attorney[']s fees and court costs necessitated by failure of the surviving spouse and/or his agent to remove tenants from Estate property and to pay over to the Estate monies due the Estate[?]

IV.   Did the court below err as a matter of law when it failed to approve a proposed division of cash proceeds for the two rental units as agreed to by the parties in a settlement agreement previously approved by the court?

For the reasons that follow, we shall affirm.

## I.   FACTUAL AND PROCEDURAL SUMMARY

Elsie Kinsey died testate on May 1, 2000. Kinsey executed her "Last Will & Testament" on July 8, 1991, years before her marriage to Roger E. Pleasanton on June 26, 1997.[2]  Pursuant

---

1.  Davis is not a party to the appeal, but represents appellant in this appeal.

2.  When the couple wed in 1997, Kinsey was 69 years of age and Pleasanton was 59 years old. *See Pleasanton v. Peterson*, No. 920,

to Kinsey's Will, her nephew, the appellant, was appointed as the Personal Representative of Kinsey's Estate. On June 16, 2000, Pleasanton, as surviving spouse, filed with the Orphans' Court for Queen Anne's County an "Election to Take Statutory Share of Estate."

In October 2000, Mr. Pleasanton brought suit in the Circuit Court for Queen Anne's County against the Estate and Peterson, individually and as personal representative, challenging the value of the probate estate. He focused on various Certificates of Deposit, totaling approximately $253,000, which the decedent had established with certain relatives well before her marriage to Pleasanton. Nevertheless, Pleasanton contended that the certificates were part of Kinsey's Estate. Following a trial in May 2001, the circuit court granted the defense's motion for judgment, embodied in a judgment of August 7, 2001. Thereafter, Pleasanton appealed to this Court. We affirmed on the merits, but remanded to the circuit court for the entry of a declaratory judgment. *Pleasanton v. Peterson*, No. 920, September Term, 2002, 145 Md.App. 723 (filed August 7, 2002) (unreported).

On March 30, 2001, Peterson filed a first administration account, in which he reported assets for the Estate of $407,952.51. Kinsey's Estate included, *inter alia*, real and leasehold properties, including properties located at 212, 216 and 244 Merganser Drive in Chestertown.

On June 29, 2001, appellant conveyed the properties at 212 and 244 Merganser Drive to Pleasanton as the surviving spouse. At that time, Pleasanton also held title to the property at 216 Merganser Drive. By Order entered November 6, 2001, however, the Orphans' Court directed Pleasanton "to deed the three (3) real properties back to the estate for distribution or sale of said properties, unless the legatees and the surviving spouse agree that the spouse may retain the one

---

September Term, 2002, 145 Md.App. 723 (filed August 7, 2002) (unreported).

parcel that he was willing to accept as a partial distribution-in-kind of his elective share."

In the interim, on August 10, 2001, appellant, through counsel, filed a "Petition for Allowance of Attorney Fees," in which he requested an award to Davis of attorney's fees of $22,599. Both Peterson and Davis signed the Petition. The Petition identified the following services rendered by Ms. Davis:

a. Identifying creditors of the Estate;

b. Preparation of Petition for Probate;

c. Arranging for bond for personal representative;

d. Arranging for appraisals of assets of the Estate;

e. Preparation of Inventory;

f. Preparation of Information Report and Amended Information Report;

g. Defending the Personal Representative in litigation wherein he was sued by the surviving spouse over non-probate assets, representing the Personal Representative in matters before the Orphans' Court pertaining to the carrying out of the provisions of the decedent's will and representing the Personal Representative in recovering assets belonging to the Estate. . . .

h. Preparation of First Administration Account and Amended First Administration Account;

i. Preparation and filing of state and federal tax returns;

j. Attending hearing on exceptions to First Account;

k. Attempting to recover assets for the Estate and a debt due the Estate.

As an exhibit to the motion, appellant attached an itemized list of approximately 150 services rendered by Ms. Davis between June of 2000 and June of 2001, along with the corresponding time that she expended. The list reflected 167.4 hours of work, at an hourly rate of $135, for a total of $22,599. From the lawyer's list of services, we have set forth

below only those entries that also appear on the fee petition submitted on the same date by the personal representative.

| | | |
|---|---|---|
| 06-19-00 | 8.0 hrs. | Chincoteague property |
| 11-14-00 | 2.5 hrs. | depo in Centreville |
| 12-05-00 | 3.5 hrs. | C'ville—client depo. |
| 12-19-00 | 2.0 hrs. | hearing on Petition to Sell—C'ville |
| 01-23-01 | 5.0 hrs. | prep. for depo. & drft. plead & depo. |
| 02-08-01 | 2.0 hrs. | CCCQAsch. conference |
| 02-13-01 | 2.0 hrs. | Hearing, P.R. v. Frank Reed & drft ltr. |
| 02-14-01 | 2.5 hrs. | Kinsey/Pleasanton |
| 02-14-01 | 2.5 hrs. | Kinsey hearing-P.R. vs. Reed |
| 02-20-01 | 3.2 hrs. | prep. for Centreville hearing |
| 03-26-01 | 5.5 hrs. | prep. hearing |
| 05-10-01 | 3.0 hrs. | prep hearing (Reed), hearing C'ville & serve subpoenas |
| 05-23-01 | 6.0 hrs. | hearing & prep for next hearing |
| 05-24-01 | 5.0 hrs. | appeal hearing in C'ville |
| 06-12-01 | 2.0 hrs. | exceptions hearing |
| 06-26-01 | 3.6 hrs. | hearing in C'ville—Replevin action |

Also on August 10, 2001, appellant filed a "Petition for Allowance of Personal Representative Commissions," in which he sought commissions of $15,787.85, representing 63.5 hours that he expended on behalf of the Estate. In his petition, appellant detailed seventeen services he rendered between June 19, 2000, and June 26, 2001, for which he claimed to have expended 63.5 hours in time. We have highlighted below the one service that does *not* appear on the attorney's fee petition of August 10, 2001.

| | | |
|---|---|---|
| 06-19-00 | 10.0 hrs. | Visiting Chincoteague property |
| 11-14-00 | 2.5 hrs. | Attending Joyce Lindauer deposition |
| 12-05-00 | 3.5 hrs. | Attending Chris Peterson deposition |
| 12-19-00 | 2.0 hrs. | Attending Hearing on Petition to Sell |
| 01-23-01 | 5.0 hrs. | Attending Pleasanton deposition |
| 02-08-01 | 2.0 hrs. | Attending CCCQAC—scheduling conference—Pleasanton v. Peterson |
| 02-13-01 | 2.0 hrs. | Attending Judicial Probate Hearing |
| 02-14-01 | 1.5 hrs. | Attending Kinsey v. Reed |
| 02-14-01 | 3.5 hrs. | Attending Kinsey v. Pleasanton |
| 02-20-01 | 3.2 hrs. | Attending Hearing on Motion—Summary Judgment |
| 03-26-01 | 5.5 hrs. | Attending Hearing On Petition For Order For Distribution of Family Allow. |
| **04-30-01** | **1.2 hrs.** | **Attending Dan Peterson deposition** |
| 05-10-01 | 3.0 hrs. | Attending Hearing on Motion to Amend Judgment—Reed |

| 05-23-01 | 8.0 hrs. | Attending Trial |
| 05-24-01 | 5.0 hrs. | Attending Appeal hearing in C'ville |
| 06-12-01 | 2.0 hrs. | Attending Exceptions hearing |
| 06-26-01 | 3.6 hrs. | Attending Hearing on replevin action |

On the same date, August 10, 2001, Ms. Davis filed a "Notice of Filing," in which she notified all interested persons that: 1) a petition for attorney's fees had been filed; and 2) the interested persons had a statutory right to object to the request within twenty days of receipt of the notice. According to the certificate of service, Ms. Davis sent copies of the petition to appellant; Daniel Peterson; and Samuel Heck and Frederick Franke, attorneys for the surviving spouse. Subsequently, on August 27, 2001, the surviving spouse, through his counsel, filed an "Answer to Petition for Allowance of Attorney's Fees," in which he objected to the proposed award of counsel fees.

In addition, Ms. Davis filed another "Notice of Filing," in which she informed all interested parties of appellant's petition for commissions and the statutory right to except within twenty days. The notice was sent to the same individuals to whom the prior notice was mailed. Then, on August 27, 2001, Pleasanton, through counsel, filed an "Answer to Petition for Allowance of Personal Representative's Commission," in which he excepted to the request for commissions.

Appellant filed his "Amended First Administration Account" on September 12, 2001, in which he reported total Estate assets of $408,551.51, an increase of $599 over the assets reported in the first administration account. On September 18, 2001, the Orphans' Court approved the amended account, "subject to exceptions being filed within twenty (20) days" of the date of the Order.

Thereafter, on October 25, 2001, Peterson, through counsel, filed a "Supplemental Petition for Allowance of Attorney Fees," in which he requested an additional $2,376 in legal fees for Ms. Davis, for a total fee award of $24,975. Both Peterson and Davis signed the Petition.

The request for an increase in fees was based on additional services rendered by Ms. Davis to prepare the amended

administration account. In the supplemental petition, appellant provided an itemized list of the additional services rendered by Ms. Davis from August 3, 2001, through October 18, 2001. It showed 17.6 hours of services, at a rate of $135 per hour, for a total of $2,376.

On October 25, 2001, Ms. Davis sent a "Notice of Filing" to the interested parties, advising that appellant filed a supplemental petition for attorney's fees and they had a statutory right to file exceptions within twenty days. Copies of the supplemental petition and the notice were sent to appellant; Daniel Peterson; Pleasanton; and to Heck and Franke as attorneys for Pleasanton. Thereafter, on November 14, 2001, counsel for Pleasanton filed "Exceptions to Supplemental Petition for Allowance of Attorney[']s Fees," objecting to the proposed award of attorney's fees.

Also on October 25, 2001, Peterson filed a "Further Revised First Administration Account," in which he reported Estate assets of $410,179.09, and noted that appellant's requests for attorneys' fees and Personal Representative commissions were "pending." Thereafter, on November 14, 2001, Pleasanton filed exceptions. In an Order of February 19, 2002, the court approved the "First and Final Administration Account," subject "to future directives of this Court."

On February 19, 2002, counsel for both Peterson and Pleasanton filed a "Joint Request for Approval of Settlement" with the Orphans' Court (hereinafter, the "Joint Settlement Request"), in which they sought court approval of a settlement agreement reached on December 27, 2001, relating to division of the Estate. The Joint Settlement Request outlined the specific terms of the proposed settlement agreement. By its terms, Pleasanton was to receive the deed to the property at 216 Merganser Drive and one-half of the net proceeds of the sale of the properties located at 212 and 244 Merganser Drive. The surviving spouse also agreed to withdraw his objections to the first administration account and the awards of attorney's fees and personal representative commissions. The settlement agreement provided, in part:

(1) In settlement of [the surviving spouse's] elective share in the Maryland estate as presently constituted (The estate excludes the Virginia property, on which there is a separate agreement, and the joint accounts on which there is no agreement) [the surviving spouse] would receive, in full satisfaction of his claim the following:

(a) The home and lot at 216 Merganser Drive;

(b) Sixty Thousand ($60,000.00) in cash;

(c) One-half the net proceeds of 244 Merganser Drive (net proceeds being defined as gross proceeds, less real estate commission and sellers [sic] share of transfer taxes, if any);

(d) Stock equivalent to Fifty Thousand ($50,000.00) Dollars on the date of transfer; and

(e) One half the net proceeds of 212 Merganser Drive less whatever the amount necessary to ensure that the estate receives an amount equivalent to one-half (½) the net proceeds of a sale at the appraised value ($45,000.00). Here the net proceeds will be defined as gross sales price $45,000.00 less real estate commission and sellers share of recordation and transfer taxes, if any.

(2) In addition, our agreement includes the follow[ing]:

(a) Real estate shall be listed with Wyble Enterprises.

(b) Sales (other than a sale through the realtor) shall be approved by both parties

(c) If the agreement is acceptable to both parties, [the surviving spouse] will dismiss his objections to the account, the attorneys fees and his circuit court appeals.

(d) If the agreement is ratified by the clients, the stock and cash would be paid within 15 days of Orphans' Court approval, or as quickly thereafter as Legg Mason can complete the transaction.

(e) Written evidence of the agreement will be recorded with the Register of Wills, so that the Orphans' Court can approve the transaction.

3. That in exchange for payment of his elective share, [the surviving spouse] agrees to withdraw his objections to the First Administration Account of William C. Peterson ... and dismiss all appeals now pending in the Circuit Court for Queen Anne's County, Maryland.

4. That the parties hereto, by the respective counsel, have confirmed their understanding of and desire to proceed to the settlement and it is in the best interest of the parties hereto to complete the settlement as quickly as possible. ...

By Order entered February 19, 2002, the Orphans' Court approved the settlement agreement. The Order also reflected the surviving spouse's withdrawal of his objections to the first administration account, including a withdrawal of objections to appellant's requests for attorneys' fees and personal representative commissions. The Order stated, in part:

## ORDER

The aforegoing Joint Request for Approval of Settlement having been read and considered, it is hereby

ORDERED, this *19th* day of *February*, 2002, that the settlement as ratified by the parties to Estate No. 7613 in the Orphans' Court for Queen Anne's County, Maryland, be and is hereby approved, and it is

\* \* \*

FURTHER ORDERED, that the objections to the First and Final Administration Account are hereby withdrawn and the same approved pursuant to future directives of this Court.

(Emphasis in original).

Pleasanton filed a "Receipt and Release of Personal Representative" on March 26, 2002, releasing Peterson "from any and all claims and demands ... in connection with the estate[.]" In addition, Pleasanton released appellant "from rendering any additional accounting for the funds heretofore received by him as Personal Representative."

That same date, March 26, 2002, the court entered an Order awarding Ms. Davis $24,975 in attorney's fees and authorizing payment of $15,787.83 in commissions to appellant, as Personal Representative.[3] The court's Order, to which no exceptions were lodged, stated:

Upon the foregoing Petition and verification, it is this *26th* day of *March*, 2002, by the Orphans' Court for Queen Anne's County, Maryland,

ORDERED that William C. Peterson, Personal Representative of the Estate of Elsie Virginia Kinsey, is authorized to pay to Elise Davis, Attorney *$24,975.00* in attorney fees and it is further

ORDERED that William C. Peterson, Personal Representative of the Estate of Elise Virginia Kinsey, is authorized to pay William C. Peterson *$15,787.75* in Personal Representative's Commissions.

Appellant pursued efforts to obtain control of assets belonging to the Estate and to dispose of the rental properties owned by the Estate. On December 30, 2002, appellant filed with the Orphans' Court a "Petition for Authority to Sell," seeking the court's approval of a sale to appellant of the rental properties at 212 and 244 Merganser Drive at the appraised value (less ten percent diminution) of $40,500 each. In his petition, appellant noted that, by having the properties sold directly to himself, he could accrue more money for the Estate and be able to "finalize the Estate sooner rather than later." Specifically, appellant stated, in part:

12. If your Petitioner was able to sell the properties at the appraised value, less a 10% diminution in value because of the damage done to them by tenants, less a 6% realtor's commission, the maximum realized would be $38,070.00.

---

3. The Order of March 26, 2002, was signed by Judges Clevenger and Morris, two of the three Orphans' Court judges at that time; Judge Ashley was the other member of the court. As a result of the general election of November 2002, however, two of the three judges of the Orphans Court were replaced. Only Judge Morris continued as a member of that court.

And there would be additional real estate taxes, and fire insurance premiums paid and maintenance that would have to be done until such time as the properties sold.

13. The Petitioner is desirous of buying both 212 Merganser drive and 244 Merganser Drive at the appraised value of $45,000.00 each, less 10% diminution in value for a net to the Estate of $40,500.00

14. Your Petitioner believes that being able to finalize the Estate sooner rather than later, contend with additional expenses for real estate taxes and fire insurance premiums, not be faced with additional expenses for real estate taxes and fire insurance premiums, not be faced with additional expenses for maintaining the trailers and saving realtor's commissions, that it would be in the best interest of the Estate and this Court to allow the Personal Representative to purchase 212 Merganser Drive and 244 Merganser Drive for the sum of $40,500 each.

By "Order of Court" entered January 28, 2003, the court **"ORDERED,** that the sale of 212 Merganser Drive and 244 Merganser Drive to the Personal Representative William Christopher Peterson for the total sum of $81,000 is hereby authorized."

Through Ms. Davis, appellant also undertook to recover $5,000 owed to the Estate by Frank Reed, a tenant of the properties at 212 and 244 Merganser Drive, who refused to vacate, and for an accounting for the rental income received by the surviving spouse during the period of time that he held title to the properties. On May 15, 2003, appellant filed a "Petition for Allowance of Additional Attorney Fees and Court Costs," seeking additional attorney's fees of $4,269.75.

On May 15, 2003, Ms. Davis also filed a "Notice of Filing," advising the interested persons that appellant had filed a petition for additional attorney's fees and they had the right to file exceptions within twenty days. Copies were sent to appellant; Daniel Peterson; and Pleasanton. No exceptions were filed.

Peterson sought to impute monies to the surviving spouse for his part in continuing litigation with the Estate. In his first "Petition to Impute Monies to Surviving Spouse," filed on January 8, 2003, appellant sought to have the rental income improperly received by the surviving spouse deducted from the monies otherwise owed to the surviving spouse pursuant to the settlement agreement. Appellant averred, in part:

1. That the Court Order the Personal Representative to attribute or credit to the surviving spouse Roger E. Pleasanton the sum of $10,740.49 ... for determining the amount of monies otherwise due the surviving spouse upon the sale of 212 Merganser Drive and 244 Merganser Drive, Chestertown, Maryland;

2. That in the alternative the court order the Personal Representative to impute or credit to the surviving spouse Roger E. Pleasanton the sum of $5,340.49 ... for determining the amount of monies otherwise due the surviving spouse upon the sale of 212 Merganser Drive and 244 Merganser Drive, Chestertown, Maryland.

By "Order of Court" entered February 4, 2003, the court granted appellant's petition and **"ORDERED, that** William C. Peterson, Personal Representative, shall impute ... the sum of $5,340.00 ... for determining the amount of monies otherwise due the surviving spouse upon the sale of 212 Merganser Drive and 244 Merganser Drive...."

In a second "Petition to Impute Monies to Surviving Spouse," filed April 25, 2003, appellant recounted the litigation relating to the Estate, which appellant alleged was "cause[d] by the destructive behavior of the Surviving Spouse, Roger E. Pleasanton." Specifically, appellant contended that Pleasanton's actions contributed to litigation in Delaware to collect monies owed to the Estate by Frank Reed and to evict the holdover tenants residing on the properties at 212 and 244 Merganser Drive. Appellant sought an order imputing an additional $4,269.75 to the surviving spouse, representing the cost of the additional litigation. Appellant explained, in part:

2. The first case involved a debt owed to the Estate by Frank R. Reed in the amount of $5,000.00. After he acknowledged the validity of the debt to the Estate it was necessary to file suit against him to obtain a Judgment to collect the money. Suit was filed against him in the District Court for Queen Anne's County, Maryland and after service and the entry of a Default Judgment against him in the amount of $5,000.00, Mr. Reed through counsel, Samuel L. Heck (who was also the attorney for the surviving spouse, Roger E. Pleasanton) on the thirtieth day following entry of the Default Judgment filed a Motion To Strike alleging the Defendant, Frank R. Reed was not susceptible to suit in Maryland. The Judge granted the Motion finding that having a car registered in Maryland is not sufficient contact with the State to have jurisdiction over an individual. Thereafter, the Personal Representative obtained counsel in Delaware to sue Mr. Reed, service was obtained and on the date set for the hearing the Personal Representative and Elise Davis, the attorney for the estate, appeared for the Estate, because Frank Reed had filed an answer saying that he was a resident of Maryland and could not be sued in Delaware. On the day of trial Frank Reed did not appear but sent his son instead to argue that his father lived in Maryland notwithstanding that he was served in Delaware. The Delaware Court rejected Frank Reed's assertions and entered judgment against him for the amount of $5,000.00 plus costs of $30.00, and shortly thereafter the said Frank Reed paid the Estate the $5,030.00. . . .

3. The second litigation case necessitated by the conduct of the Surviving Spouse Roger E. Pleasanton was necessitated by his failure to comply with requests of the Personal Representative and return personal property belonging to the decedent. When the property was not returned a replevin action was filed in the District Court for Queen Anne's County against the Surviving Spouse however he objected to jurisdiction because he was a resident of Delaware and notwithstanding the fact that he had instituted two legal cases in Maryland. The District Court ruled in

the Surviving Spouse's favor and dismissed the replevin action. The Personal Representative then retained counsel in Wilmington, Delaware.... By the time the Surviving Spouse turned over the personalty, $970.00 in attorney's fees had been expended for the Wilmington attorney....

4. The third and fourth litigation matters came about because the Surviving Spouse and/or his attorney-in-fact Dudley McClain told three tenants at 212 and 244 Merganser Drive that notwithstanding the fact that those properties had been conveyed back to the Estate those tenants did not have to follow the direction of the Personal Representative including paying rent to him. The Personal Representative gave [the tenants] notice to quit the premises they occupied and when they failed to do so, the Personal Representative had to file landlord/tenant actions in the District Court for Queen Anne's County, [t]he Court ordered the tenants to leave, they did and then the Personal Representative had to file civil complaints for the back rent owed by the tenants. The tenant Manley defended against her action, the case was tried and the court entered a judgement [sic] against her in the amount of $200.00 plus costs. The claim was for six-hundred dollars but Manley produced a receipt for the May rent signed by the surviving Spouse after the property was deeded back to the Estate. Following the Judgment Manley paid the $200.00 plus costs back to the Estate. Suit was filed again against the [tenants] Hohreins and after much investigation by the Personal Representative as to their whereabouts, they were served and Judgment was entered against them in the amount of $1,125.00 plus court costs....

On May 15 2003, appellant filed yet another "Petition to Impute Monies to Surviving Spouse," in which, on behalf of the Estate, he sought to recover $1,110.98, representing the cost for personal property allegedly removed from the rental properties by the surviving spouse. In the petition, appellant claimed:

1. At the time the premises located at 244 Merganser Drive and 212 Merganser Drive, Chestertown were con-

veyed by the Personal Representative to Roger E. Pleasanton on or about June 29, 2001, they each had operating dryers in good working order.

2.  When the said 244 Merganser Drive and 212 Merganser Drive were conveyed by Roger E. Pleasanton back to the Estate and the Personal Representative was able to gain control[ ] of the premises on or about August 31, 2002, neither of the premises had a dryer and 212 Merganser Drive had the same refrigerator as on June 29, 2001.

3.  During the course of a hearing on October 25, 2002, Dudley McClain, attorney-in-fact for Roger E. Pleasanton, testified and submitted two bills for dryers that he allegedly purchased for 212 and 244 Merganser drive because what was there was not operable and a new refrigerator for 212 Merganser Drive.

4.  The bills for replacement dryers and refrigerator ... submitted to this Court totaled $1,110.98.

5.  During the course of the hearing on January 21, 2003, Kim Manley, the tenant at 244 Merganser Drive for the entire period that the property was owned by the said Roger E. Pleasanton[, testified] that the premises did not have a dryer and that she did not remove a dryer from the premises which she vacated on or about August 31, 2002.

6.  When the Personal Representative purchased replacement dryers for said premises at 212 and 244 Merganser Drive, they cost a total of $300.00.

By "Order of Court" entered May 27, 2003, the Orphans' Court denied appellant's second and third petitions to impute monies to the surviving spouse. By a separate "Order of Court" entered that same day, the court denied the petition for additional attorneys' fees. Moreover, on May 27, 2003, after completing an audit of the various papers filed on behalf of the Estate, and while awaiting closure of the Estate, the court, *sua sponte,* issued a Show Cause Order to appellant and Ms. Davis "to show cause why the personal representative fees paid ... should not be reduced as originally fixed" by the court on March 26, 2002. The court noted "that all of such

papers filed were filed by the Attorney for the estate and not by the personal representative."

A show cause hearing was held on June 10, 2003, at which appellant and Ms. Davis appeared. It does not appear that anyone else attended. At the outset of the hearing, the court noted its concern with the duplication of services in regard to attorneys' fees and the Personal Representative's commissions. The court stated: "The question is now arisen and the arguments that we're having here today is there were duplications of services by [counsel] and by Mr. Peterson which we had documented and that's what we want an explanation [for] today."

Ms. Davis explained that she and appellant worked together on the same tasks, assisting each other. Ms. Davis also contended that the court lacked the authority, *sua sponte,* to review its prior order, issued on March 26, 2002, awarding $24,975 in counsel fees and $15,787.83 in commissions to the Personal Representative.

The following colloquy is pertinent with respect to the court's concern about duplicate services:

[MS. DAVIS]: . . . The hours I cannot begin to document that we spent in each and every way on this case, frequently having to do it together, me as the attorney, him providing his input as to knowledge of Elsie Virginia Kinsey. The notice was given of those petitions. They were given many times, and there came a point that the surviving spouse, Roger Pleasanton, and his attorneys withdrew their objections and this Court approved both.

[CHIEF JUDGE DIPIETRO]: Yes. And upon, and **upon review, an audit of that we saw that it was a duplication and as you recall, there was only two judges, and that was a previous Court, not this Court. The previous Court approved that when Ms. Clevenger was the Chief Judge. We have a policy now. We will audit each and every account that we sign off on, and where we see inconsistencies with the statute, we will issue a show cause for the people to come in and further explain.**

Now, you said *we* several times in your presentation here, you did this and he did that or we worked together, which is fine. Now I could go down every one of these things and point out probably fifteen or twenty things that "we", you and Mr. Peterson allegedly have done together. I have problems with that, big problems. **Unless one person does it, Mr. Peterson hired you to do this, why would you need Mr. Peterson to share responsibility and you get your fee and he gets his fee** . . . .

[MS. DAVIS]: Well,—

[CHIEF JUDGE DIPIETRO]: And I'll go through each one in a moment, but if you wish, I could start with the preparation of the petition for the probate which was done by you, yet Mr. Peterson said that he did it.

[MS. DAVIS]: He had to provide information with regard to it.

[CHIEF JUDGE DIPIETRO]: Well, that's part of your job to question him to do that. If he does it, he gets paid. If you do it, you get paid.

[MS. DAVIS]: Judge, first of all, **I would submit that the order of last spring is a final order. I don't think this Court has the authority to go back and undo what an earlier Court did. But, in a case of the documentation that was filed in, I think it was August and October of 2001, the work involved both normal administerial activities as well as the litigation that was prompted by the surviving spouse.**

(Italics in original; boldface added).

With regard to travel to Kinsey's Virginia property, for which both Ms. Davis and appellant sought compensation, the following exchange is pertinent:

[CHIEF JUDGE DIPIETRO]: *Well, I wish the facts and petitions substantiate[d] what you're saying, but I see a lot of duplications* of preparation of the petition, arranging for the bond, which you say you did, arranging for appraisals which you say you did, and he says he did.

[MS. DAVIS]: Yes, we both did.

[CHIEF JUDGE DIPIETRO]: Yeah, and—

[MS. DAVIS]: I arranged for the—

[CHIEF JUDGE DIPIETRO]: You arranged for the petition, for the appraisal to go to Chincoteaque, Virginia to have this appraiser down there appraise a lot with a trailer on it valued at $25,000 at Appomattox County, Virginia. Who arranged for that?

[MS. DAVIS]: We went down.

* * *

[CHIEF JUDGE DIPIETRO]: I understand it takes two hours to go from Chestertown [i.e., where appellant resides] to Easton [i.e., the location of Davis's office] to meet up with you to drive to Accomac, Virginia and look at this piece of property. I question the wisdom and the value of that expense against the estate.

[MS. DAVIS]: Okay. Let me give you an example of some of what happened down there. Mr. Peterson had keys that belonged to Mrs. Kinsey. He knew about where the property was and it's not a situation where there was a house number out on the street. Once we got to the place and tried the keys, none of them worked. Mr. Peterson, over the years, had done checks for an individual who cut the grass for Mrs. Kinsey at the Chincoteague property so, we got a phone book and went and found him. The individual knew him by name and didn't have a clue as to who I was and because he knew who he was, he was able to make arrangements for the individual to go over there and get the existing lock off and get a new lock in, giving him the key. I couldn't have done that.

[CHIEF JUDGE DIPIETRO]: Well, I'm not expecting you to do it. . . . I question why you even had to go down there. You're the attorney. He was the Personal Representative. It was part of his duties to do that. You charged the estate eight hours and it was over $1,000, almost $1,200 to go down there for that ride down there and I don't think that that's a

justifiable claim as an expense for you to bill the estate that fee for your trip.

[MS. DAVIS]: Well,—

[CHIEF JUDGE DIPIETRO]: You certainly didn't fix the lock. You certainly could have gone by the report that was made by this [appraiser] who gave a detailed appraisal. We're only talking about a $25,000 piece of property with a dilapidated trailer on it, and over $1,500 to go down and look at it and change the lock. That's not fair and reasonable to the estate or the legatees, who again I say, Mr. Peterson is a legatee. . . .

\* \* \*

[CHIEF JUDGE DIPIETRO]: You're telling me that it was necessary for you and Mr. Peterson to go to Accomac, Virginia?

[MS. DAVIS]: Yes. Yes.

[CHIEF JUDGE DIPIETRO]: Well, I disagree with you.

[MS. DAVIS]: Well you know, one of the things we had to do down there was one, find an appraiser, and two find an attorney in order to take care of the, the estate proceedings that would be necessary in the Commonwealth of Virginia. We were over the state line so I had no ability to act.

[CHIEF JUDGE DIPIETRO]: I know you were not at an ability to act but, for both of you to make that trip and charge it to the estate, this Court finds that that's excessive and not fair and reasonable.

(Emphasis added).

The court also questioned appellant's presence at various depositions conducted by Ms. Davis, as well as at other court proceedings. The following exchange is pertinent:

[CHIEF JUDGE DIPIETRO]: . . . I'm sure Mr. Peterson did a lot of the work in his lay work for you, but to sit in depositions where he would have nothing to do but just sit there and go for two hours and other court proceedings, and just sit there as a witness or even as an interested party is

not considered work done for the estate. That's for his own edification.

[MS. DAVIS]: No it's not, Your Honor. Let me give you an example.

[CHIEF JUDGE DIPIETRO]: Please do.

[MS. DAVIS]: I never, prior to Mrs. Kinsey's death, had any dealings with Mrs. Kinsey, with Mr. Pleasanton [i.e., the surviving spouse], and while I knew who Dudley McClain (phonetic) was, my knowledge of him did not marry him up as being a family of Mrs. Kinsey, in fact, he was her nephew. There were many things said over a period of time while Mrs. Kinsey was alive. There were also certain things said by Roger Pleasanton to Mr. Peterson both before and after her death. Now, when I take somebody's deposition, my client's sitting there, okay? We get a lot of "sitting there" in this case. We noted exactly one deposition, and that was Mr. Pleasanton. All the other depositions were brought about by Mr. Pleasanton's attorney. They filed an incredible amount of discovery requests, so Mr. Peterson had the job of pulling the stuff together and then I had the obligation under the Rules to organize the information as it is specified under the Rules, and then prepare the written response that is required when one is responding to interrogatories or to a request for production for documents. Personal [R]epresentative's commissions are determined by the size of the estate. There has been growth in the estate by virtue of dividends received in the last three years, and we're not going back for any more. The only time that I have charged for this last year, have been the litigation matters involving Mr. Pleasanton, Mr. Reed and the tenants. All of these other petitions I consider to be a part of what needs to be done for the estate, so I don't know how either one of us could be more reasonable in what we have done. There's no doubt in my mind that if we brought in any attorney who does estate litigation who would say that it's, I think it's $15,000 and $24,000, so let's say $40,000 for what we have been through, is anything but reasonable.

Furthermore, the court inquired about the cost effectiveness of expending counsel fees of over $4200 to recover an outstanding debt of $5000 in connection with the rental properties. The following exchange is illuminating:

[CHIEF JUDGE DIPIETRO]: May I question the cost effectiveness of that action to recover $5,000.

\* \* \*

[MS. DAVIS]: I don't think, *in fact I'm sure, that the money spent to recover the $5,000 with both sets of attorneys' fees came in under $1,000; 20 percent attorneys' [sic] fees.*

[CHIEF JUDGE DIPIETRO]: The only thing I have to go by is your petition where you said you were imputed $5,000.

[MS. DAVIS]: That was total.

JUDGE DIPIETRO: Yeah, $5,000 recovered and $4,200 plus you said the two other actions on there which I didn't think was cost effective but nonetheless, you said you've done that.

(Emphasis added).

The court was of the view that it retained the authority to review previously approved commissions, so long as the estate remained open, i.e., so long as the court had not approved the final accounting for the estate. The judge commented:

*Mr. Peterson, you hired your attorney to do this, you can't charge the estate for doing what she is doing for you.* This man prepared a detailed appraisal for you. I don't know why you had to spend ten hours going down there and Ms. Davis had to spend eight hours, costing the estate between your fee and her fee almost $1,500. Eight hours going down, you, ten hours, we have some legatees which you are a legatee in this estate. We have to protect the legatees in this estate, and duplication, I'm not, I wasn't on the Court at the time, but I would not sign such an order. And as far as *Hunter v. Harlan* or *Harlan v. Hunter, [170 Md. 513, 185 A. 327 (1936) ] it gives this Court the authority to review any previously paid commissions to a PR as long*

*as the estate is still open. This estate is still open. It is not closed and it [ie., the Orphans' Court] still has jurisdiction over previously paid counsel fees.* So, if you want to read that case, that would help you out to understand why we are here today.

(Italics added).

On June 10, 2003, the same date as the show cause hearing, appellant filed a "Motion to Reconsider" the court's orders of May 27, 2003, denying his request for additional attorney's fees, as well as his petitions to impute monies to the surviving spouse. Following the show cause hearing and the court's review of appellant's motions to reconsider, and by orders of June 19, 2003, the court authorized payment of additional attorney's fees of $1423.25, but reduced appellant's commissions from $15,787.85 to $5787.85.

In its Order granting additional attorney's fees, the court determined that the fees represented "a one-third attorney compensation for litigation necessitated by the Estate for the collection of a debt due from Frank Reed in the amount of $5,000.00, to remove tenants from 212 and 244 Merganser Drive, for collecting monies due for rent from those individuals and to recover personal property from the surviving spouse." In reducing appellant's commissions, the court said:

... The Court feels that [the reduction] is fair and reasonable in light of the size of this estate and the amount of the work performed.

There were numerous duplications of services alleged in both Petitions for Attorney Fees and Personal Representative Commissions. Therefore, this Court feels it fair and reasonable to compensate William C. Peterson for information supplied to the attorney who properly filed all Petitions and Orders for the estate, for which she has been compensated for.

On July 18, 2003, appellant filed two motions for reconsideration of the court's Order of June 19, 2003. In one motion, addressing attorney's fees, appellant reiterated that the additional litigation was caused by the actions of the surviving

spouse. He contended: "It is an abuse of discretion and an illegal act for the Court to arbitrarily establish a one-third fee for work that was caused by the surviving spouse." In the other motion, concerning commissions for the Personal Representative, appellant contended: "[N]o interested party . . . filed an application with the Court to change the amount of the Personal Representative's Commissions," initially approved by the court in March 2002. According to appellant, the court lacked the authority to unilaterally revise the award of commissions.

Addressing in his motion the court's reliance on *Harlan, supra*, 170 Md. 513, 185 A. 327, and *Riddleberger v. Goeller*, 263 Md. 44, 282 A.2d 101 (1971), appellant argued:

The Court in determining it had the authority to unapprove something that had been approved some fifteen months earlier with the consent of all interested parties, cited the cases of *Harlan v. Hunter, 170 Md. 513[, 185 A. 327]* and *Riddleberger v. Goeller, 263 Md. 44[, 282 A.2d 101]*. Said cases are inapposite to the facts in this Estate and said cases do not grant an Orphans court the authority to change accounts approved by it some fifteen months earlier. In the *Harlan* case an executor filed a propsed account which was objected to by an interested party and because of the facts the interested party brought to the attention of the Orphans['] Court, it refused to pass the account, *Harlan,* supra @ 512[ at 515, 185 A. 327. The court in *Harlan* stated that "with reference to commissions, the Orphans Court has jurisdiction to allow commissions . . . within the limits prescribed by the various sections of the Code [ . . . ] and *"to review its action on application within a reasonable time[.]"* In this case, there was no application by an interested party to review, a 15 month hiatus is certainly not "within a reasonable time" and the account had already been passed by the Court.

In *Riddleberger v. Goeller,* 263 Md. 44[, 282 A.2d 101], a proposed account was filed claiming attorneys fees, Personal Representative commissions, and brokers [sic] commissions. Interested persons filed exceptions as to all three. The

Orphans['] Court rejected the requested brokers commissions but approved the Personal Representative Commissions and attorneys [sic] fees and some of the interested persons filed an appeal. The Court of Appeals affirmed the award of Personal Representative Commissions but reduced the amount of attorneys [sic] fees. In this case, the Personal Representative commissions and attorneys [sic] fees were approved by the Interested Persons and then by the Court.

Then, on July 25, 2003, appellant filed a second administration and partial distribution account. Pursuant to the prior settlement agreement between the Estate and the surviving spouse, appellant included an accounting of the distribution of the proceeds of the sale of the rental properties at 212 and 244 Merganser Drive. The account stated, in pertinent part:

Monies due Roger E. Pleasanton on sale of 212 and 244 Merganser Drive per settlement agreement determined as follows:

| | |
|---|---|
| 212 Sale Price | $45,000.00 |
| Less 6% commission | - *2,700.00* |
| | $42,300.00 |
| Due Estate | $21,150.00 |
| | |
| Actual | $40,500.00 |
| Less 6% Commission | - *2,430.00* |
| | $38,070.00 |
| | |
| Pay to Roger E. Pleasanton | $16,920.00 (per 2-19-02 agreement) |
| | |
| Pay to Estate | $21,150.00 |
| | |
| 244 Actual | $40,500.00 |
| Less 6% | - *2,430.00* |
| | $38,070.00 |
| | |
| Pay to Roger E. Pleasanton | $19,035.00 |
| | |
| Pay to Estate | $19,035.00 |

(Emphasis added).

By Order filed August 19, 2003, the court affirmed its earlier Order of June 19, 2003, in which it had reduced appellant's commissions. It said, in part:

The Orphans' Court has the power to reduce commissions originally fixed. *Harlin [sic] v. Hunter 170 Md. 513[, 185 A. 327], (1936)*. Reasonable time is not controlling, since the court discovered the error in the audit of the estate papers awaiting the filing of the Final Administration Account, and commissions are not earned until the Final Administration Account is fixed. *Id.* The key is what the Court deems as fair and reasonable within the limitations set forth by E & T § 7–601. It is not fair or reasonable for the Personal Representative and the Attorney of the estate to both be paid for claiming to have done the same filings and work and to petition the court to get paid twice. See E & T §§ 7–601 and 7–602 and annotations thereto.

By another "Order of Court," entered on August 19, 2003, the court withheld approval of the second account. In that Order, the court also affirmed its Order of June 19, 2003, in which it reduced appellant's commissions. It ruled, in relevant part:

[T]hat the said account shall not be approved until such time as the accounting is revised to reflect the following:

1. The 6% commission of $2,430.00 on the sale of 212 Merganser Drive shall not be allowed. The 6% real estate commission was not actually paid to a real estate broker.

2. The 6% commission of $2,430.00 on the sale of 244 Merganser Drive shall not be allowed. The 6% real estate commission was not actually paid to a real estate broker.

3. The Personal Representative's Commissions are reduced pursuant to this Court's Orders of June 19, 2003 and August 19, 2003.

Thereafter, on September 15, 2003, appellant noted his appeal to this Court.[4] We shall include additional facts in our discussion.

---

4. We consider, *nostra sponte*, the appealability of the issues presented here. We are satisfied that the orders reducing commissions and denying additional attorneys' fees are appealable, despite the fact that the estate was still open when the appeal was noted.

## II. DISCUSSION

Appellant launches a multilateral attack upon the proceedings below. We shall discuss each contention in turn.

### A. Personal Representative's Commissions

█ Appellant contends that the Orphans' Court lacks the "authority to change accounts approved fifteen months earlier by a different Orphans['] Court." He asserts: "In this case, there was no application by an interested party to review, a 15 month hiatus is certainly not 'within a reasonable time[,]' and the account had already been passed by the Court." (Citation omitted). Moreover, pointing to the Order of March 26, 2002,

---

Title 6 of the Maryland Rules is entitled "**Settlement of Decedents' Estates.**" Md. Rule 6–416, entitled "**Attorney's fees or personal representative's commissions,**" outlines the rules applicable to awards for attorneys' fees and personal representative's commissions in the Orphans' Court. Md. Rule 6-416(a)(5) is entitled "Exception," and provides: "An exception shall be filed within 20 days after service of the petition and notice and shall include the grounds therefor in reasonable detail. A copy of the exception shall be served on the personal representative." Of particular interest, subsection (a)(6), entitled "Disposition," provides: "If timely exceptions are not filed, the order of the [Orphans'] court allowing the attorney's fees or personal representative's commissions becomes final."

Here, although Pleasanton initially noted exceptions to the petitions for attorneys' fees and commissions, the exceptions were withdrawn prior to the court's Order granting $24,975 in attorney's fees and $15,787.75 in commissions. Moreover, as discussed, *supra,* there were no objections filed to the appellant's petition for additional attorneys' fees, filed May 15, 2003.

In *National Wildlife Fed'n v. Foster,* 83 Md.App. 484, 495, 575 A.2d 776 (1990), this Court held that, where no interested parties filed exceptions to a request for attorneys' fees for an estate's attorney, the award of attorneys' fees by the Orphans' Court is a " 'final and binding' " order under § 7–502(b) (citation omitted). The order was therefore appealable under Md.Code (1974, 2002 Repl.Vol.), § 12–501 of the Courts and Judicial Proceedings Article ("C.J."), which grants a party the right of appeal from a final judgment of an Orphans' Court. *Id.* at 494, 575 A.2d 776. *See also Beyer v. Morgan State Univ.,* 139 Md.App. 609, 630–33, 779 A.2d 388 (holding that where no interested party filed exceptions to an attorney's request for fees, an Orphans' Court order granting attorneys' fees was a final and appealable order pursuant to C.J. § 12 -501), *aff'd,* 367 Md. 86, 785 A.2d 1290 (2001). Moreover, pursuant to C.J. § 12–501, appellant was entitled to bypass

which was never challenged, appellant argues: "In this case, the Personal Representative commissions and attorney[']s fees were approved by the Interested Persons and then by the Court and then became final," pursuant to Maryland Code (2001 Repl.Vol.), § 7–502 of the Estates and Trust Article ("E.T.").

According to Peterson, the court's reduction of the commissions was "not done pursuant to an express grant of power given to [the Orphans' Court] by law." He cites *Johnson v. Johnson*, 265 Md. 327, 331, 289 A.2d 318 (1972), for the following proposition: " '[N]othing is more certain than the proposition that an appeal will not lie from a court's refusal to reopen a previous decision which has become final[. T]o hold otherwise would [lead] to interminable litigation[.]' "

Appellee disagrees. According to appellee, "The Orphans' court properly reduced the amount of the personal representative's commissions previously authorized because the personal representative and the attorney for the estate sought fees and commissions for the same filings and work." Moreover, the Orphans' Court contends:

The determination of the amount of commissions due executors an administrator [sic] is entirely within the discretion of the Orphans' Court, *Newton v. Johnson*, 173 Md. 166[, 195 A. 312] (1937), and the Orphans' Court has statutory authority to allow such commissions within the limits prescribed by law, among which includes the power to review and reduce the commissions originally fixed prior to an account being made final. *Harlan v. Hunter*, 170 Md. 513, 518[, 185 A. 327] (1936).

Further, appellee asserts:

[A]t the time the Orphans' Court issued its Order on June 19, 2003, the Kinsey Estate was still open, the commissions applied for had not been earned, and the Orphans' Court had the jurisdiction and authority to determine the proper

---

the circuit court and appeal directly to this Court "from a final judgment of an orphans' court."

commission to be paid as it was entirely within its discretion to do.

The question we are called upon to decide is whether the Orphans' Court may, *sua sponte,* review and then reduce its previous award of commissions while an estate is still open. We are satisfied that it may. We explain.

The authority of the Orphans' Court to award commissions to a personal representative is derived from statute. E.T. § 7–502, entitled "**Proposed payment to personal representative or attorney,**" is relevant. It states, in pertinent part:

(a) *Notice.*—The personal representative shall give written notice to . . . all interested persons of a claim, petition, or other request which could result, directly or indirectly, in the payment of a debt, commission, fee, or other compensation to or for the benefit of the personal representative or the attorney for the estate. The notice shall state the amount requested, and set forth in reasonable detail the basis for the request. It shall also state that a request for hearing may be made within 20 days after the notice is sent.

**(b) *Finality of order.*—Unless there was fraud, material mistake, or substantial irregularity in the proceeding or a request for a hearing is filed within 20 days of the sending of the notice, any action taken by the court on the petition is final and binding on all persons to whom the notice was given.**

(Boldface added).

E.T. § 7–601, entitled "**Compensation of personal representative and special administrator,**" is also relevant. It provides, in pertinent part:

**§ 7–601. Compensation of personal representative and special administrator.**

(a) *Right to compensation.*—A personal representative or special administrator is entitled to reasonable compensation for services. . . .

(b) *Computation of compensation.*—Unless the will provides a larger measure of compensation, upon petition filed

in reasonable detail by the personal representative or special administrator *the court may allow the commissions it considers appropriate.* The commissions may not exceed those computed in accordance with the table in this subsection.

\* \* \*

(c) *Appeal.*—Within 30 days a personal representative, special administrator, or unsuccessful exceptant may appeal the allowance to the circuit court, which shall determine the adequacy of the commissions and increase, but not in excess of the above schedule, or decrease them.

(Emphasis added).

The Court of Appeals has long recognized that "matter[s] of accounting by executors and administrators and of the allowance of their commissions" are within the province of the Orphans' Court. *Harlan v. Hunter, supra,* 170 Md. at 517, 185 A. 327. The Court explained in *In re Estate of Watts,* 108 Md. 696, 71 A. 316 (1908):

In fixing the commissions of an executor the Orphans' Court properly looks to the nature and extent of the of the executor's labor with the aim of course, of allowing such commissions as will be fair compensation for his services rendered in the administration of the estate; and within the limits prescribed by [the predecessor statute to E.T. § 7–601], *the amount to be allowed is at the discretion of the court.* Where a lower tribunal is charged with the performance of duties, in the discharge of which it is clothed with discretion, in the absence of clear and satisfactory proof of its refusal, or of such arbitrary conduct as amounts to a refusal, to exercise that discretion, its action, within the limits of the discretion vested in it, cannot be controlled or reviewed on appeal.

*Id.* at 699–700, 71 A. 316 (Emphasis added). *See Riddleberger,* 263 Md. at 51–52, 282 A.2d 101 (holding that where the commissions approved are within the limitations imposed by law, they will not be disturbed on appeal).

■ In addition, the Orphans' Court has the authority to review a prior grant of personal representative commissions based on the request of an interested person that is made "within a reasonable time, and to reduce the commissions originally fixed...." *Harlan*, 170 Md. at 518, 185 A. 327. The *Harlan* Court reasoned that the commissions "are not regarded as earned until the administration account is passed by the court[.]" *Id.* But here, there was no request by an interested party, and the revision arguably was not made within a reasonable time.

*Newton v. Johnson*, 173 Md. 166, 195 A. 312 (1937), provides guidance. There, the Orphans' Court passed an order fixing the commissions of an administrator. Two years and eight months later, while the estate remained open, the court rescinded its prior order and revised its award of commissions. From the decision, various interested parties appealed. *Id.* at 168, 195 A. 312. The *Newton* Court affirmed the Orphans' Court's revised order granting commissions, stating: "[T]he right to change or modify an original order fixing the rate [of commissions] rests in the court, until such time as the administration account is passed[.]" *Id.* at 171, 195 A. 312. *See also* 10 MARYLAND LAW ENCYCLOPEDIA, *Executors & Administrators* § 182, at 504 (1999) ("M.L.E.") ("The commissions allowed to a personal representative, although fixed prior to such time, are not regarded as earned by him or her until the administration account is passed by the court"); 10 M.L.E. *Executors & Administrators* § 183, at 505. ("An original order fixing the rate of commissions may be modified by the Orphans' Court until the administration account is passed"); 10 M.L.E. *Executors & Administrators* § 187, at 509 ("[T]he maximum and minimum rates of commission fixed by statute apply where the administration is full and complete; there is no minimum allowance fixed by law for a partial administration").

Even after final ratification, there are circumstances that permit revisions of fee awards. In *Malkus v. Richardson*, 124 Md. 224, 92 A. 474 (1914), the Court of Appeals recognized the "ample authority" of the Orphans' Court, in limited circumstances, "to correct errors in the accounts of executors and

administrators *after* final ratification, and to abrogate and modify their own orders, when necessary to promote the ends of justice." *Id.* at 229, 92 A. 474.

We glean from the authorities cited above that the Orphans' Court is vested with discretion in matters of fees and commissions while an estate is open. Here, it is uncontested that, when the Orphans' Court issued its Order of May 27, 2003, reducing the award of commissions to appellant, the final administration account had not yet been ratified; the Kinsey Estate remained open.

Moreover, appellant has not directed us to any authority limiting the prerogative of the Orphans' Court, in the exercise of its discretion, to revisit the matter of the award of commissions to a personal representative prior to closure of an estate. Nor are we aware of any authority restricting the right of the Orphans' Court to revise, *sua sponte*, its previous Order.

We find it helpful to analogize to the power of a trial court to revisit earlier rulings during the pendency of a case. It is well settled that, while a case remains open, " 'a judge presiding at a trial . . . is free at any time during the trial to reconsider any prior ruling in the case, *whether made by him or by another judge.*' " *Driver v. Parke–Davis & Co.*, 29 Md.App. 354, 362, 348 A.2d 38 (1975), *cert. denied*, 277 Md. 736 (1976) (quoting *Layman v. State*, 14 Md.App. 215, 230, 286 A.2d 559, *cert. denied*, 265 Md. 740 (1972)) (emphasis added); *see also Baltimore Police Dep't v. Cherkes*, 140 Md.App. 282, 300, 780 A.2d 410 (2001) (" 'As a general principle, one judge of a trial court ruling on a matter is not bound by a prior ruling in the same case by another judge of the same court[.]' ") (citation omitted); *Placido v. Citizens Bank and Trust Co. of Md.*, 38 Md.App. 33, 45, 379 A.2d 773 (1977).

We are satisfied that, under the circumstances attendant here, it was within the Orphans' Court's discretion to revisit and modify its prior award of commissions.[5]

5. We pause to point out that we were not called upon to determine whether the Orphans' Court was clearly erroneous in finding that

## B. Attorney's Fees

Appellant contests the Orphans' Court's denial of the request for an additional $4,269.79 in attorney's fees; after reviewing appellant's request, the court awarded only $1,423.25 in additional attorney's fees. Appellant argues:

> There was no request for hearing filed by any interested parties with respect to the petition for additional attorneys['] fees and court costs, as those fees and costs are allowed by statute, and the Orphans['] Court is not authorized to impose contingent fee awards, it was an abuse of discretion by the Orphans['] Court to allow a sum less than the claimed attorneys['] fees and costs.

Appellee counters: "Under [E.T.] § 7–602, determination of a reasonable compensation for services of an attorney rests with the exercise of sound judgment and discretion of the court, employing the statutory standards and basing its determination upon the evidence offered." Relying on *Wolfe v. Turner*, 267 Md. 646, 299 A.2d 106 (1973), appellee notes the relationship between the court's award of Personal Representative commissions and attorneys' fees, asserting:

> [T]he commissions allowed to the personal representative and fees to the attorney may be awarded where the court's review of the petition for commissions and attorney fees does not exceed what the court determines to be the fair and reasonable total charge for the overall cost of administering the particular estate.

---

appellant's services were duplicative. Nor were we asked to determine whether the Orphans' Court abused its discretion in rejecting dual submissions for attorney's fees and personal representative commissions. Therefore, we express no opinion as to the merits of the ruling of the Orphans' Court.

We add that this Opinion should not be construed to suggest that it is always inappropriate or unreasonable for a personal representative to assist the attorney by attending depositions or court proceedings, or to seek and obtain compensation for such services. In the appropriate case, the Orphans' Court may determine that a personal representative is entitled to fees for such services, even when legal fees are also awarded for comparable services.

Further, appellee contends that the court considered appropriate factors in awarding only $1423.25 in additional attorneys' fees. Appellee asserts: "[T]he Orphans' Court properly awarded an attorneys' fee and Court costs of $1,423.25 in light of the fact that the litigation[,] while necessary to recover a debt due, was not cost effective."

■ Preliminarily, we note that the parties have not addressed whether appellant is actually aggrieved by the issue of the award of attorney's fees to Ms. Davis. Put another way, the parties have not discussed whether appellant has standing to challenge the denial of the attorney's fee petition. Nevertheless, we raise this matter *nostra sponte*. *See Kilsheimer v. Dewberry & Davis*, 106 Md.App. 600, 603 n. 2, 665 A.2d 723 (1995) ("Standing ... is an issue that we sometimes will address *nostra sponte* "), *cert. denied*, 341 Md. 406, 671 A.2d 20 (1996); *Commission on Human Relations v. Anne Arundel County*, 106 Md.App. 221, 236, 664 A.2d 400 (1995) ("[W]e consider the issue of standing as falling within the category of cases, in addition to jurisdiction, that an appellate court may address although it was not raised by a party."); *see also County Council of Prince George's County v. Offen*, 334 Md. 499, 509, 639 A.2d 1070 (1994); *Cf. Lewis v. Lewis*, 290 Md. 175, 179, 428 A.2d 454 (1981) ("[P]arties may not by consent confer jurisdiction upon this Court or the Court of Special Appeals"); *Burns v. Scottish Development Co. Inc.*, 141 Md. App. 679, 688, 787 A.2d 786 (2001).

· In *Frater v. Paris*, 156 Md.App. 716, 848 A.2d 673 (2004), this Court dismissed the personal representatives' appeal taken from an order of the Circuit Court for Montgomery County, sitting as the Orphans' Court. In this Court's view, the personal representatives were not aggrieved by the court's order, and thus lacked standing to complain on appeal. *Id.* at 723, 848 A.2d 673. The appellants were the personal representatives of a multi-million dollar estate; one of the appellants was also a legatee, but appeared below and in this Court only in his capacity as a personal representative. *Id.* at 717, 723 n. 4, 848 A.2d 673. The wife elected to take her statutory

share rather than a bequest under the will, *id.* at 718, 848 A.2d 673, and the circuit court directed the appellants to amend their Revised Sixth and Final Administration Account to reflect a payment to the widow of one-half of the net value of the estate as of the time of distribution, rather than of the value as of the time of the decedent's death. *Id.* at 717–18, 848 A.2d 673. It was that ruling that the personal representatives sought to challenge on appeal.

Looking to *Webster v. Larmore*, 270 Md. 351, 354, 311 A.2d 405 (1973), the *Frater* Court reiterated that, where the Orphans' Court has passed an order regarding distribution of an estate, " 'a personal representative is bound to make a distribution in accordance with that court's order, since the personal representative is fully protected by it[.]' " 156 Md.App. at 720–21, 848 A.2d 673. We further noted that none of the legatees claimed that his or her interest in the estate would be reduced due to the court's distribution order. *Id.* at 723, 848 A.2d 673. Writing for this Court, Judge Rodowsky said:

> Here, there is no appeal by any of the legatees whose participation in the distribution of income earned during administration would be reduced in a Final Account, revised to comply with the order of the court below.[ ] [T]he personal representatives have no standing to appeal the order of the court below.

*Id.* at 723, 848 A.2d 673 (footnote omitted).

*Grabill v. Plummer*, 95 Md. 56, 51 A. 823 (1902), on which *Frater* relied, is also relevant. In *Grabill, id.* at 59–60, 51 A. 823, the administratrix petitioned an orphans' court to grant attorneys' fees, representing the cost of her successful defense of a caveat in the deceased's will. The court granted the request in full, but ordered the deduction of the fees from the share belonging to the beneficiaries taking under the will, and not from appellee, the deceased's widower, who elected to take his statutory share. *Id.* at 60, 51 A. 823. The administratrix appealed, but the Court of Appeals dismissed the appeal "because the appellant, as administratrix . . ., ha[d] no interest

in the subject matter of the appeal, and [could not] be aggrieved by the passage of the order." *Id.* at 60, 51 A. 823.

Significantly, when questioned by this Court at oral argument, Ms. Davis did not articulate any basis to support appellant's standing to challenge the court's ruling as to attorneys' fees. Moreover, as in *Frater*, appellant appeared below and in this Court only in his capacity as Personal Representative. *See Buchwald v. Buchwald,* 175 Md. 103, 114, 199 A. 795 (1938) (Executor appealed in both his personal and representative capacities from an orphans' court's order rendering void various provisions in will; Court dismissed executor's appeal in his representative capacity for lack of aggrievement). Moreover, it appears that Davis was hired by Peterson to render services on behalf of the Estate, not on behalf of Peterson personally. There is no indication in the record that appellant will be held personally liable to Davis for whatever amount of attorney's fees were not awarded by the court.

Accordingly, on this record, we fail to discern how appellant is aggrieved by the amount of attorney's fees awarded to Ms. Davis. " 'It does not appear from the record that the [personal representative] has in any capacity such an interest in the subject-matter as entitles him to appeal[.]' " *Frater*, 156 Md.App. at 722–23, 848 A.2d 673 (citation omitted). Therefore, pursuant to *Frater* and *Grabill*, we are satisfied that appellant lacks standing to appeal from the court's disposition of the Petition for an award of attorney's fees.

■ Even if appellant has standing, the claim lacks merit. We explain.

The authority of the Orphans' Court to award attorney's fees to counsel for an estate is derived from statute and is governed by E.T. § 7–602. It provides:

### § 7–602. Compensation for services of an attorney.

(a) *General.*—An attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative.

(b) *Petition.*—Upon the filing of a petition in reasonable detail by the personal representative or the attorney, the court may allow a counsel fee to an attorney employed by the personal representative for legal services. The compensation shall be fair and reasonable in light of all the circumstances to be considered in fixing the fee of an attorney.

(c) *Considered with commissions.*—If the court shall allow a counsel fee to one or more attorneys, it shall take into consideration in making its determination, what would be a fair and reasonable total charge for the cost of administering the estate under this article, and it shall not allow aggregate compensation in excess of that figure.

■ It is well settled that the award of attorneys' fees by the Orphans' Court "requires the exercise of discretion and judgment." *Wolfe,* 267 Md. at 653, 299 A.2d 106. Moreover, the award "will not be disturbed in the absence of proof of abuse of discretion." *Id.* Recently, in *Beyer v. Morgan State Univ.,* 369 Md. 335, 353, 800 A.2d 707 (2002), the Court of Appeals said: "The decision to allow attorney's fees is dependent upon the Orphans' Court's exercise of its discretion to approve all, some, or none of the requested fees." *See Wright v. Nuttle,* 267 Md. 698, 700–01, 298 A.2d 389 (1973) ("[T]he allowance of a fee to counsel . . . is clearly within the discretion of the orphans' court, and in the absence of an abuse of this discretion, will not be disturbed"); *National Wildlife Fed'n v. Foster,* 83 Md.App. 484, 496, 575 A.2d 776 (1990) ("[T]he allowance of counsel fees by an orphans' court requires the exercise of discretion and 'will not be disturbed in the absence of proof of abuse of discretion' ") (citation omitted).

■ The Court of Appeals has also outlined the "principal elements" to be considered by the Orphans' Court in determining the reasonableness of an award of attorney's fees. *Wolfe,* 267 Md. at 653, 299 A.2d 106. They include "the amount [of the requested fee] involved, the character and extent of the services, the time employed, the importance of the question, the benefit to the estate and the customary charges made for similar services." *Id.* Moreover, the Court

has noted that, pursuant to E.T. § 7–602, the Orphans' Court, "incident to the approval of counsel fees, shall take into account both counsel fees and commissions allowed or to be allowed the personal representative in determining what is a fair and reasonable charge for the settlement of an estate, to the end that aggregate compensation shall not exceed this amount." *Wright,* 267 Md. at 701, 298 A.2d 389; *see Wolfe,* 267 Md. at 653, 299 A.2d 106 ("[I]n setting a counsel fee, the commissions allowed personal representatives should be taken into account, so that overall charges for administration shall be neither unfair nor unreasonable").

Based on the foregoing, we perceive neither error nor abuse of discretion in the court's award of $1,423.25 in additional attorney's fees. It is clear that the court considered the cost effectiveness of the additional litigation. It is also obvious that the court abided by the directive of E.T. § 7–602 by taking into account the duplication of services rendered by the Personal Representative and the Estate's legal counsel. Furthermore, although the court noted that the award of $1,423.25 represented "a one-third attorney compensation," necessitated by the additional litigation, there is no evidence that the court was awarding a "contingent fee," as contended by appellant. Additionally, at the show cause hearing on June 10, 2003, Ms. Davis stated: "[I]n fact I'm sure[ ] that the money spent to recover the $5,000 with both sets of attorneys' fees came in under $1,000; 20 percent attorney's [sic] fees."

## C.  Division of Cash Proceeds From Sale of Rental Properties

Appellant contends that the court violated the settlement agreement previously approved in February 2002, when it failed to approve the proposed distribution of proceeds reflected in the Second Administration and Partial Distribution Account. As previously outlined, the settlement agreement between the Estate and the surviving spouse provided that, *inter alia,* the surviving spouse was to receive one-half of the net proceeds of the sale of the rental property at 244 Merganser Drive, with net proceeds being defined as "gross proceeds,

*less real estate commission* and sellers [sic] share of transfer taxes, *if any.*" (Emphasis added). Additionally, the settlement agreement provided for the surviving spouse of one-half of the net proceeds of the sale of the rental property at 212 Merganser Drive, "less whatever the amount necessary to ensure that the estate receives an amount equivalent to one-half of the net proceeds of a sale at the appraised value ($45,000.00)." In the case of the property at 212 Merganser Drive, net proceeds were defined by the agreement as "gross proceeds, *less real estate commission* and sellers [sic] share of transfer taxes, *if any.*" (Emphasis added).

Appellant seems to contend that the court violated the settlement provisions regarding distribution of proceeds of the sale of the rental properties, because it refused to approve the distribution contained within the second administration account, which included a deduction for a six percent real estate commission. Appellee counters that the court was entitled to withhold approval of the distribution because appellant failed to provide evidence that the Estate actually employed a real estate broker in the sale of the rental properties, notwithstanding that the accounting indicated that a 6% real estate commission had been paid. According to appellee: "The Orphans' Court had the authority to deny the accounting for the reasons stated and did not take any action contrary to the settlement agreement[.]"

█ In our view, our previous analysis as to standing applies, as well, to appellant's contentions regarding the court's failure to approve the proposed distribution of cash proceeds from the sale of the rental properties. As we noted in *Frater, supra,* 156 Md.App. 716, 848 A.2d 673, when an Orphans' Court has passed an order regarding distribution of an estate, " 'a personal representative is bound to make a distribution in accordance with that court's order, since the personal representative is fully protected by it[.]' " *Id.* at 720–21, 848 A.2d 673 (citing *Webster v. Larmore, supra,* 270 Md. at 354, 311 A.2d 405). As with his attorneys' fees claim, appellant appeared below and in this Court only in his repre-

sentative capacity; he does not personally contest the court's failure to approve the proposed distribution. Therefore, appellant lacks standing to appeal on this ground. *See Frater,* 156 Md.App. at 723, 848 A.2d 673.

Even if appellant has standing, however, his contentions lack merit. We explain.

■ As previously noted, nothing is more peculiarly within the jurisdiction of the Orphans' Court than its authority to pass on accountings by personal administrators of estates. *Harlan, supra,* 170 Md. at 517, 185 A. 327. Accordingly, we will not overturn a decision of the Orphans' Court relating to an administration account unless we are satisfied that the court erred or abused its discretion.

E.T. § 2–102, entitled **"Jurisdiction of court,"** is pertinent. It states, in part:

### § 2–102. Jurisdiction of court.

(a) *Powers.*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred. . . .

■ E.T. § 2–102 has been interpreted to grant the Orphans' Court the authority to direct the conduct and accounting of estates. *See Goldsborough v. DeWitt,* 169 Md. 463, 473–74, 182 A. 324 (1936); *Parker v. Leighton,* 131 Md. 407, 102 A. 552 (1917). Here, appellant argues that the court withheld approval of the second administration account, in contravention of the settlement agreement previously approved by the court in February 2002. But, the court only refused to approve the account because of appellant's inclusion of a six percent charge for what the court regarded as a phantom real estate commission; appellant offered no evidence that he employed a broker in the sale of the properties and actually incurred the broker's fees. Indeed, in its Order of August 19,

2003, withholding approval of the second account, the court stated, as to both properties: "The 6% commission ... shall not be allowed. The 6% real estate commission was not actually paid to a real estate broker."

Interestingly, appellant does not argue to this Court that the services of a broker were, in fact, employed. Nor does he direct us to any evidence indicating that the Orphans Court erroneously determined that the commissions were not paid to a real estate broker. Accordingly, it was appellant who was arguably in contravention of the settlement agreement between the Estate and surviving spouse, which provided for a deduction of real estate commissions "*if any.*" Consequently, we are satisfied that the court did not err or abuse its discretion in withholding approval of the second administration account pending appellant's revision thereof, removing any deduction for real estate commissions.

### D.  Imputation of Monies

██  Appellant also presents a question regarding the court's failure to impute monies to the surviving spouse. However, in his brief, appellant fails to include an argument in support of this issue, in violation of Md. Rule 8–504(a)(5) ("A brief shall ... include the following: (5) Argument in support of the party's position.") Accordingly, we decline to address the issue. *See* Md. Rule 8–504(c) ("For noncompliance with this Rule, the appellate court may dismiss the appeal or make any other appropriate order with respect to the case[.]"); *see also Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994) (" '[W]here a party initially raised an issue but then failed to provide supporting argument, this Court has declined to consider the merits of the question so presented but not argued' ") (citation omitted), *cert. dismissed,* 337 Md. 580, 655 A.2d 370 (1995).

**JUDGMENT AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**